IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 98-50311

———————————————

EVANGELICAL LUTHERAN CHURCH IN AMERICA, (ELCA);
TEXAS-LOUISIANA GULF COAST SYNOD OF THE
EVANGELICAL LUTHERAN CHURCH IN AMERICA

                                    Plaintiffs - Appellees

                    versus

ATLANTIC MUTUAL INSURANCE COMPANY

                                    Defendant - Appellant

———————————————

Appeal from the United States District Court
for the Western District of Texas

———————————————

March 11, 1999

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This is a choice-of-law puzzle with a substantive law question about whether the insurance company defendant has the duty to defend the plaintiffs in litigation against them. Because we find that Illinois law applies and imposes a duty to defend, we AFFIRM.

I

This is a suit for declaratory judgment resting on diversity jurisdiction by Evangelical Lutheran Church in America and the Texas-Louisiana Gulf Coast Synod of the Evangelical Lutheran Church in America against their insurer, Atlantic Mutual Insurance Co.

The insureds claim, and the district court agreed, that the insurance company has a duty to defend them with respect to allegations of negligence in a Texas civil action styled <u>Clark v. Baker</u>. The company denied coverage both for the defense of the underlying action and for any damages that might be received.

The <u>Clark</u> lawsuit alleged that Richard Carl Baker, a minister whom the ELCA had ordained, sexually assaulted Cindy Clark, a learning disabled adult. The assaults allegedly occurred from 1993 to 1994 at the Brenham State School, an institution for the mentally handicapped operated by the state in Brenham, Texas. In March 1997, Clark amended her petition to name the ELCA and the Synod as defendants. The insureds allegedly were negligent in training, supervising, placing, and monitoring Chaplain Baker, who has been indicted for alleged sexual contact with three mentally handicapped individuals. Baker was never an agent or employee of the ELCA or the Synod, but graduated from the Lutheran Theological Seminary, located in Gettysburg, Pennsylvania, in 1959. He is listed on the ELCA clergy roster as a retired Lutheran pastor.

Two insurance policies, each including a Comprehensive General Liability and a Commercial Umbrella Liability component, potentially apply. The first provided nationwide coverage for the Evangelical Church, and the second covered both the Synod and approximately 40 other regional synods. Both policies included a provision agreeing to pay "damages because of 'bodily injury' or 'property damage' to which this insurance applies," but the

2

policies explicitly require that "[t]he 'bodily injury' or 'property damage' must be caused by an 'occurrence.'" An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general conditions." Both policies excluded "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."[1]

The policies were negotiated at ELCA's headquarters in Chicago, and delivered through a New York insurance broker, Arthur J. Gallagher & Co. Upon receipt, Gallagher delivered the policies to the ELCA in Chicago. Gallagher billed the policies from New York, but ELCA pays the premiums from Chicago, and the Synod apparently pays its premiums from its Houston office.

The plaintiffs' suit here was originally filed in the Northern District Court of Illinois and transferred by Atlantic Mutual to the Western District of Texas, pursuant to 28 U.S.C. § 1404(a). Atlantic Mutual had filed its own declaratory judgment action, but that suit was dismissed. After the transfer, Atlantic Mutual sought summary judgment. In December, 1997, the district court

---

[1] Both policies also provided for coverage attributable to "any negligent act, error and omission of the insured arising out of the performance of professional services for others in the insured's capacity as a pastoral counselor." This coverage, however, did not apply to "[l]icentious, immoral or sexual behavior intended to lead to or culminating in any sexual act." Although Atlantic Mutual emphasizes this provision, it does not apply. Even if Chaplain Baker was acting "as a pastoral counselor," the insureds were not, since Baker was not working for them at the time.

rejected this motion and subsequently granted judgment in favor of the insureds.  This appeal followed.

II

Our first task is to determine which state's substantive law applied.  Because this action was filed in the Northern District of Illinois and transferred under § 1404(a), Illinois choice-of-law rules apply.  See Ferens v. John Deere Co., 494 U.S. 516 (1990).  Illinois choice-of-law doctrine in this area is "obscure," Lee v. Interstate Fire & Cas. Co., 86 F.3d 101, 102 (7th Cir. 1996), but in this case, precedent produces a clear result, the application of Illinois substantive law.

In Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co., 655 N.E.2d 842 (Ill. 1995), the Illinois Supreme Court considered an insurance policy delivered in Illinois covering the subject matter property in Minnesota, as well as property located in five other states. "[T]o obtain a consistent interpretation of the policy and to reasonably apply Illinois choice of law principles," the court ruled, "Illinois law must govern the interpretation of this policy." Id. at 527.  The insurance policies in the instant case covered nationwide risks, and obtaining a consistent interpretation of the policy requires application of Illinois law.

The strongest counterargument relies on Society of Mount Carmel v. National Ben Franklin Insurance Co., 643 N.E.2d 1280 (Ill. App. Ct. 1994).  After reciting the various factors relevant

4

to choice-of-law analysis in Illinois,[2] the court stated that the "location of the insured risk is given special emphasis." Id. at 1287. After quoting the Restatement comment that the "location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally in a single state," Restatement (Second) of Conflict of Laws § 193 cmt. b, at 611 (1971), the court added: "This is so even where the policy in question covers multiple risks located in several states, as is the case here." 643 N.E.2d at 1287.

Reliance on Mount Carmel is misplaced for two reasons. First, the risk here arguably cannot "be located . . . principally in a single state." The risk here involves the possibility that a pastor trained in Pennsylvania will cause injury in some other state. This case is thus distinguishable from Mount Carmel. While that case involved risks in multiple states, each of those risks was discrete and could be identified with a specific state. Second, Mount Carmel preceded Lapham-Hickey and was decided by a lower court. Thus, to the extent that they are inconsistent, Lapham-Hickey controls.

---

[2]"[I]nsurance contract provisions may be governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a relationship to the general contract." Id. at 1287 (citation omitted). The Illinois Supreme Court reiterated these factors in Lapham-Hickey. See 655 N.E.2d at 526-27.

5

The appellants also seek refuge in two Seventh Circuit cases applying Illinois law, Lee and Massachusetts Bay Insurance Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116 (7th Cir. 1998).  The Lee court chose the place of the insured risk rather than the place of the policy's delivery because two insurance policies were involved, one issued in the United Kingdom, the other in Illinois.  Thus, to achieve the Lapham-Hickey goal of consistent interpretation, the Lee court properly ignored the means the Lapham-Hickey court chose to arrive at this goal.  In this case, by contrast, the Lapham-Hickey goal is aligned with its means of choosing the law of the state where the insurance policy was delivered.  The Massachusetts Bay decision did cite Society of Mount Carmel and did choose the law corresponding to the location of the insured risk.  In that case, though, the insured risk was an automobile leased in Tennessee, and there was no concern about multi-state coverage.

In sum, under Illinois choice-of-law rules, the place of the insured risk does not receive special consideration where risks are nationwide.  This leaves Illinois and New York as possible candidates for application of substantive law.  The Lapham-Hickey court placed some emphasis on the domicile of the insured, but no emphasis on the insurer's domicile, which was not even identified. See id. at 845 (noting, before concluding, that "Lapham-Hickey is an Illinois corporation and Protection is licensed to do business in Illinois").  The law of Illinois, where ELCA was headquartered

6

and the insurance contract was delivered, is a better candidate than the law of New York, as counsel conceded at oral argument.

III

The policy provisions we have quoted, and in particular the definition of "occurrence," did not arise by accident, and indeed it was confusion about what is an "accident" that spurred the definitional changes leading to the current form of the exclusions. Before 1966, Comprehensive General Liability policies generally referred simply to an "accident," but continued litigation and uncertainty over this term led to the substitution of the word "occurrence." See 7A J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4492 (1979); see also Queen City Farms, Inc. v. Central Nat'l Ins. Co., 827 P.2d 1024, 1038-39 (Wash. Ct. App. 1994). In 1972, after complaints that this definition was too restrictive, the definition of "occurrence" was changed to "an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured." See APPLEMAN, supra. The policies here essentially track this definition, though the "expected nor intended" phrase is now a separate exclusion rather than part of the definition itself.

The language of the exclusions, of course, is still vague enough to allow for generous amounts of litigation. See generally James L. Rigelhaupt, Jr., Annotation, Construction and Application of Provision of Liability Insurance Policy Expressly Excluding

7

Injuries Intended or Expected by Insured, 31 A.L.R.4th 957 (1981 & Supp. 1998). The factual situations confronted have been various. See, e.g., Southern Md. Agric. Ass'n v. Bituminous Cas. Corp., 539 F. Supp. 1295 (D. Md. 1982) (holding, based on Maryland law, that the alleged malicious interference with contract did not constitute an "occurrence"); Adams v. Kent Ins. Co., 431 So. 2d 335 (Fla. App. 1983) (counting damage from a sudden rainstorm as an "occurrence," based on a factual finding that the rain was unexpected); Pique v. Saia, 450 So. 2d 654 (La. 1984) (requiring coverage where the insured precipitated a brawl by swinging at a police officer); Nielsen v. St. Paul. Cos., 583 P.2d 545 (Ore. 1978) (finding no intent to injure and thus no insurer liability in case involving repossession of property); Gene's Restaurant, Inc. v. Nationwide Ins. Co., 548 A.2d 246 (Pa. 1988) (refusing coverage in suit involving the beating of a restaurant patron, on the ground that the beating was not an accident).

We need not develop a general theory for interpreting such provisions, because the Illinois law is clear. The case applying Illinois law that is most on point is United States Fidelity & Guaranty Co. v. Open Sesame Child Care Center, 819 F. Supp. 756 (N.D. Ill. 1993). That case involved almost identical insurance provisions, and the court concluded that allegations of negligent hiring fell within the definition of "occurrence." This case is only persuasive authority, but its deductions from Illinois law are persuasive.

Under Illinois law, if a complaint potentially supports a ground for recovery, the insurer must defend the entire complaint. See, e.g., Maryland Cas. Co. v. Peppers, 355 N.E.2d 24 (Ill. 1976). More importantly, in USF&G v. Wilkin Insulation Co., 578 N.E.2d 926, 932 (Ill. 1991), the Illinois Supreme Court found that allegedly negligent installation of asbestos-laced products was an "occurrence" and was not excluded as an "intentional" act. Even though the installation was intentional, the negligent hiring was not. See also Mutual Serv. Cas. Ins. Co. v. Country Life Ins. Co., 859 F.2d 548, 552 (7th Cir. 1988) ("Similar policy language in other insurance cases has been construed so that intentional torts are deemed outside the scope of such an 'occurrence.'"); State Sec. Ins. Co. v. Globe Auto Recycling Corp., 490 N.E.2d 12 (Ill. App. Ct. 1986) (requiring insurance company to reimburse costs of defending negligent hiring claim, even though negligence claim was coupled with uncovered intentional tort claim).

Here, negligent training was not an intentional tort, and Chaplain Baker's acts are not the insureds' intentional acts. Thus, the insurance policy did not exclude the acts, and Atlantic Mutual has a duty to defend.

AFFIRMED.