Carlyle KING, individually and d/b/a Tiedown Construction Company, Petitioner,

v.

**DALLAS FIRE INSURANCE COMPANY, Respondent.**

No. 00–1152.

Supreme Court of Texas.

Argued Oct. 10, 2001.

Decided Aug. 29, 2002.

---

**36.** Tex.R.App. P. 33.1(a).

**37.** 898 S.W.2d 251, 252 (Tex.1995).

Earnest W. Wotring, Micheal Wayne Dobbs, Connelly Baker Wotring & Jackson, Houston, Robert W. Higgason, Law Office of Robert W. Higgason, The Woodlands, Richard Gardner Wilson, David Wayne Hodges, Kennedy Hodges, P.L.L.C., Houston, for Petitioner.

Ronald E. Tigner, Charlotte A. Fields, Preis Kraft & Roy, Cynthia Ann Holub, Greenberg Peden Siegmyer & Oshman, Houston, for Respondent.

Justice ENOCH delivered the opinion of the Court.

Both Dallas Fire Insurance Company and Carlyle King, individually, and doing business as Tiedown Construction Company, have filed motions for rehearing. We deny Dallas Fire's motion, but grant King's motion. We withdraw our opinion and judgment dated May 30, 2002, and substitute the following in its place.

In an underlying lawsuit, Greg Jankowiak sued King for injuries he received when one of King's employees attacked him. In addition to a claim of *respondeat superior*, Jankowiak also sued King directly for negligent hiring, training, and supervision. In this case, King seeks to enforce the duty to defend contained in a commercial liability policy issued by Dallas Fire.

Our question is whether an employer's alleged negligent hiring, training, and supervision constitute an "occurrence" under the terms of the insurance policy although the injury was directly caused by the employee's intentional conduct. If the employer's alleged negligent hiring, training, and supervision constitute an "occurrence," then Dallas Fire must defend King. The trial court concluded that Dallas Fire did not owe King a duty to defend. The court of appeals affirmed in a divided opinion.[1] Because we conclude there was an "occurrence," we reverse the court of appeals' judgment and remand the case to the trial court for proceedings consistent with this opinion. The issue of whether Dallas Fire would owe a duty to defend on only the vicarious liability claim is not before this

---

1. 27 S.W.3d 117.

Court, and we express no opinion on that issue.

## I

Carlyle King is the sole proprietor of Tiedown Construction Company, which removes excess materials from building sites. Dallas Fire insured King through a commercial general liability policy. Jankowiak, who was an employee of another company working on the same site as King, sued King, claiming that one of King's employees, Carlos Lopez, assaulted him. According to Jankowiak's petition, after confronting Lopez about some missing and damaged electrical wiring, Lopez attacked him, kicking him in the face and causing serious injury. Jankowiak also alleges that King was liable for the injuries, not only on the basis of *respondeat superior*, but also because of King's own negligence in hiring, training, and supervising Lopez. Jankowiak amended his petition and specifically alleged that King was negligent in failing to run a criminal-background check, in failing to determine whether Lopez had a propensity for violence, or in failing to provide any training on how to "peaceably and responsibly handle work generated construction site situations."

King forwarded Jankowiak's petitions to Dallas Fire, which refused to defend King because Jankowiak did not allege an "occurrence" within the meaning of King's insurance policy. King brought this declaratory judgment action, asking the trial court to determine that Dallas Fire was legally obligated to defend the underlying action against him. After considering cross-motions for summary judgment, the trial court concluded that Dallas Fire did not owe King a duty to defend. A divided court of appeals affirmed.[2]

## II

 The only question we are asked is whether, under the facts alleged in this case, there was an "occurrence" invoking the insurer's duty to defend. The duty to defend and the duty to indemnify are distinct and separate duties.[3] An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy.[4] This is the "eight corners"[5] or "complaint allegation rule."[6] "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured."[7] But we resolve all doubts regarding the duty to defend in favor of the duty.[8]

Dallas Fire's policy covers "bodily injury" or "property damage" "caused by an 'occurrence' that takes place in the 'coverage territory.'" "Occurrence" is further defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Dallas Fire contends that there is no occurrence in this case because the actions of King's employee, Lopez, were intentional. King responds by asserting that he, himself, did not intend to injure Jankowiak; his only potential contribution to Jan-

2. *Id.* at 119.

3. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821–22 (Tex.1997).

4. *See National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997).

5. *Id.*

6. *Cowan,* 945 S.W.2d at 821.

7. *Id.* (quoting *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 848 (Tex.1994)).

8. *See Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965)).

kowiak's injury was perhaps negligently hiring, training, or supervising Lopez. Therefore, from King's standpoint, Jankowiak's injuries were the result of an accident—an occurrence invoking the duty to defend.

In deciding whether there has been an "occurrence" under the policy, we must determine from whose standpoint we view the injury-triggering event. There are three choices: the insured's, the victim's, or the actor's. The policy's express language, our case law, and the history behind the Commercial General Liability policy all support the conclusion that the insured's standpoint controls in determining whether there has been an "occurrence" that triggers the duty to defend.

### A

Express provisions of this policy support construing the policy from King's standpoint. One provision states:

Separation of Insureds.

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

 a. As if each Named Insured were the only Named Insured; and

 b. Separately to each insured against whom claim is made or "suit" is brought.

Another provision in pertinent part states:

Exclusions.

This insurance does not apply to:

 a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

The separation-of-insureds provision expressly creates separate insurance policies for King and King's employee, Lopez. The policy provides that we are to treat the insureds "[a]s if each Named Insured were the only Named Insured." Consequently, we are instructed to determine whether there has been an "occurrence" as if King were the only insured.

Amicus Curiae [9] in support of Dallas Fire argue that the separation-of-insureds provision should only be used to interpret an exclusion from coverage and not whether there has been an occurrence. They argue that the separation-of-insured provision evolved from confusion in interpreting "the insured" as that term is used in the policy exclusions.[10] We agree that the separation-of-insureds provision has been used in the past to construe exclusionary clauses,[11] but these cases have not limited the separation-of-insureds provision to exclusion provisions. And the express language of the separation-of-insureds provision isn't so limited. Furthermore, as this policy indicates, the drafters of the policy knew how to limit applying the separation-of-insureds provision; they did so by specifically excluding Section III, Limits of Insurance, from its application. If the policy drafters did not want the separation-of-insureds provision to affect Section I, Coverages, they could have said so. As the policy is currently drafted, the separation-of-insureds provision applies to all sections except the Limits of Insurance and those rights and duties specifically assigned to King.

---

9. Travelers Casualty and Surety Company.

10. *See Dep't of Transp. & Pub. Facilities v. Houston Cas. Co.,* 797 P.2d 1200, 1205–06 (Alaska 1990) (Matthews, C.J., concurring).

11. *See Commercial Standard Ins. Co. v. American Gen. Ins. Co.,* 455 S.W.2d 714, 721 (Tex. 1970).

Dallas Fire argues that the separation-of-insureds provision does not affect this case because this is an occurrence-based policy that requires us to focus on the "injury causing event." Dallas Fire relies on *Fidelity & Guaranty Insurance Underwriters, Inc. v. McManus.*[12] But *McManus* is inapposite. In *McManus,* we construed a specific provision that excluded injuries caused by the "ownership, maintenance, operation, use, loading or unloading of a recreational motor vehicle away from the residence."[13] We concluded that the exclusion barred the insurer's duty to defend a negligent entrustment claim.[14] The difference between *McManus* and this case is that the exclusion in *McManus* had no intent element. It was thus not necessary to consider the insured's relationship to the event, because the exclusion was premised on a readily determined fact—whether the recreational motor vehicle was being used away from the residence. Here, the exclusionary provision expressly states that whether an occurrence was an accident depends on the insured's standpoint.

At its core, Dallas Fire's argument is that King's employee's intent should control whether there is a duty to defend King under the policy. That is, because the employee's conduct was intentional, there is no "occurrence" under the policy. That argument not only ignores the policy language that delineates between separate insureds, it also ignores the intended-injury exclusion provision. That exclusion, which excludes coverage for injuries "intended from the standpoint of the insured," would have no purpose if all intended injuries were excluded at the outset from coverage because they would not be an "occurrence."

**B**

Our previous decisions also support the conclusion that we view the event from the insured's standpoint. In *Republic National Life Insurance Co. v. Heyward,*[15] this Court held that a murder victim's widow could recover the accidental death proceeds in a life insurance contract. In reaching this conclusion, we quoted *Hutcherson v. Sovereign Camp, W.O.W.:*[16]

The test of whether the killing is accidental within the terms of an insurance policy is not to be determined from the viewpoint of the one who does the killing, but rather from the viewpoint of the insured.[17]

Dallas Fire argues that because these cases do not interpret occurrence-based policies they should not affect this Court's opinion. These cases construe first-party insurance contracts, but they are relevant because they address the ultimate issue of whose standpoint should be used to determine if there has been an accident. These cases define coverage in terms of the insured's view of the injury-triggering event and not the actor's intent.

Our analysis in *Trinity Universal Insurance Co. v. Cowan*[18] is consistent with our applying the definition of accident found in *Heyward* to this case. In *Cowan,* we construed a homeowner's policy that covered an "occurrence."[19] We relied on *Heyward* and *Hutcherson* in concluding

---

**12.** 633 S.W.2d 787 (Tex.1982).

**13.** *Id.* at 788–89.

**14.** *Id.* at 790.

**15.** 536 S.W.2d 549, 559 (Tex.1976).

**16.** 112 Tex. 551, 251 S.W. 491 (1923).

**17.** *Heyward,* 536 S.W.2d at 552.

**18.** 945 S.W.2d 819 (Tex.1997).

**19.** *Id.* at 826.

that it was from the insured's standpoint that we were to determine whether the event was an accident.[20]

While in *Cowan* we held that there was no coverage, we did so because the actor *was* the insured. In *Cowan*, the insured made copies of revealing photographs and showed them to his friends.[21] When the plaintiff found out and filed suit, the insured asserted that it was an accident because he did not intend for the plaintiff to find out about the copies.[22] But the insured's conduct was not accidental, because he "did exactly what he intended to do when he purposefully copied the photographs and showed them to his friends."[23] Similarly, Dallas Fire argues that King's employee intended to injure Jankowiak and that the injuries were reasonably foreseeable from the employee's actions, and therefore, there is no "occurrence."

But *Cowan* considered a different issue than we do today. *Cowan* determined whether the results of the actor's intentional conduct were "reasonably anticipated."[24] Yet it did so in a context in which the actor was also the insured, and he was seeking coverage for his own intentional conduct. This is equivalent to Lopez, who is an additional insured under Dallas Fire's policy, seeking coverage for his own actions. If this were the case, we would be asking whether Lopez could have "reasonably anticipated" the result of his intentional act. It is a different question entirely to decide whether Jankowiak's injury was an occurrence with respect to King.

Dallas Fire asks that we consider and follow other jurisdictions, particularly the Fifth Circuit, that have concluded that an occurrence depends on the employee's alleged conduct and not the insured employer's alleged conduct. We note that a number of other jurisdictions have considered whether an employer's negligent hiring, training, and supervision is an "occurrence" when an employee's intentional conduct caused the alleged injury. Courts are generally split.[25] Some courts have focused on the employee's intentional conduct and concluded that there is no duty to defend the employer,[26] while other courts have decided that the employer's alleged negligent acts do constitute an occurrence.[27]

The Fifth Circuit holds there is no duty to defend, using a "related to and interdependent" rule. The Fifth Circuit reasons that the claims against the employer are wholly derivative from the underlying intentional conduct.[28] According to this rea-

20. *Id.* at 826–27.

21. *Id.* at 820–21.

22. *Id.* at 826.

23. *Id.* at 827; *see also Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex. 1973).

24. *Cowan*, 945 S.W.2d at 828.

25. *See* 2 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 11:3, at 319 (4th ed. 2001).

26. *See American Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 325 (5th Cir.2001); *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1217 (11th Cir.1999); *American Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 810 (5th Cir.1997); *Smith v. Animal Urgent Care, Inc.*, 208 W.Va. 664, 542 S.E.2d 827, 832 (2000).

27. *See American Employers Ins. Co. v. Doe*, 165 F.3d 1209, 1212 (8th Cir.1999); *Evangelical Lutheran Church v. Atlantic Mut. Ins. Co.*, 169 F.3d 947, 951 (5th Cir.1999); *Agoado Realty Corp. v. United Int'l Ins. Co.*, 95 N.Y.2d 141, 711 N.Y.S.2d 141, 733 N.E.2d 213, 215 (2000); *Doe v. Shaffer*, 90 Ohio St.3d 388, 738 N.E.2d 1243, 1249 (2000).

28. *See, e.g., American States Ins. Co. v. Bailey*, 133 F.3d, 363, 371–73 (5th Cir.1998); *1906 Co.*, 129 F.3d at 810; *Columbia Mut. Ins. Co.*

soning, there would be no cause of action against the employer but for the employee's intentional acts and therefore there is no "occurrence" to invoke the policy.[29] Essentially, the Fifth Circuit's position is that negligent actions derived from an intentional incident do not exist in the abstract and would not exist but for the intentional conduct.

Dallas Fire principally relies on the Fifth Circuit's opinions in *Bailey* and *1906 Co.* to support its argument.[30] The genesis of the Fifth Circuit's rule, as articulated in these two cases, lies in *Old Republic Insurance Co. v. Comprehensive Health Care*, a district court decision.[31] In *Old Republic*, the district court had to decide whether the insurer had a duty to defend an employer against various claims, including negligent hiring, arising from supervisors' sexual harassment and discrimination. Though the district court acknowledged that certain policy provisions excluded coverage for the claims, it analyzed whether the claims fell within the policy's coverage for "occurrences."[32] The court concluded that the alleged conduct against the employer was not an "occurrence" under the policy, because "each and every allegation [arose] out of the alleged acts of sexual harassment" and

therefore were "related and interdependent."[33]

The Fifth Circuit affirmed the district court's decision on the ground that specific policy provisions excluded the claims alleged.[34] The Fifth Circuit expressly did not reach the "occurrence" issue.[35] And we do not think that the Texas cases the district court relied on supported its holding because they either involved a specific policy provision excluding coverage for the alleged conduct, or involved claims arising from the *insured's* intentional conduct.[36] Nevertheless, Fifth Circuit decisions since *Old Republic* have relied on the district court's "related and interdependent rule," erroneously presuming this reflects Texas law.[37]

As discussed above, Texas law requires us to look at the pleadings' allegations and the insurance policy's language from the separate insured's standpoint to determine the duty to defend.[38] Those allegations are to be considered "without reference to the truth or falsity of such allegations."[39] And, when we do, we conclude the Fifth Circuit's rule improperly imputes the actor's intent to the insured. That is to say, whether one who contributes to an injury is negligent is an inquiry independent from whether another who directly causes the injury acted intentionally. Essentially, the

v. *Fiesta Mart, Inc.*, 987 F.2d 1124 (5th Cir. 1993).

29. See *Bailey*, 133 F.3d at 372.

30. See *id.* at 371–73; *1906 Co.*, 129 F.3d at 810.

31. *Old Republic Ins. Co. v. Comprehensive Health Care Associates, Inc.*, 786 F.Supp. 629 (N.D.Tex.1992), *aff'd on other grounds*, 2 F.3d 105 (5th Cir.1993).

32. *Id.* at 631 & n. 1.

33. *Id.* at 632.

34. *Old Republic*, 2 F.3d at 107.

35. *Id.*

36. See *Maupin*, 500 S.W.2d at 635; *Thornhill v. Houston Gen. Lloyds*, 802 S.W.2d 127, 130 (Tex.App.-Fort Worth 1991, no writ); *Centennial Ins. Co. v. Hartford Accident & Indem. Co.*, 821 S.W.2d 192, 194 (Tex.App.-Houston [14th Dist.] 1991, no writ); *Aberdeen Ins. Co. v. Bovee*, 777 S.W.2d 442, 444 (Tex.App.-El Paso 1989, no writ).

37. See, e.g., *Bailey*, 133 F.3d at 371.

38. *Cowan*, 945 S.W.2d at 821–22; *Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141.

39. *Maupin*, 500 S.W.2d at 635.

actor's intent is not imputed to the insured in determining whether there was an occurrence.[40] We conclude this is the better approach.

## C

Finally, the evolution of the Commercial General Liability (CGL) policy supports the result we reach today. While there are multiple variations on language in the standard CGL form, a well known treatise on insurance, *Appleman On Insurance 2d*, identified some broad modifications in language over the years that have affected the construction of the CGL policy.[41] According to the treatise, the language "expected or intended from the standpoint of the insured" found its origin in 1966 redraft of the general CGL form.[42] The definition of "occurrence" in CGL policies in 1966 read:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful condition, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.[43]

There had been some confusion over whether an injury causing event was to be determined an accident by relying on the insured's standpoint or the victim's standpoint. Determining whether there was an accident from the victim's perspective was unacceptable to insurers because there would usually be coverage, because most incidents are unintended from the victim's standpoint. The 1966 revision eliminated

the possibility that policies would be construed from the victim's point of view and mandated that occurrence be determined from the "*standpoint of the insured.*"

In 1986, the CGL form was again modified. The language "expected or intended from the standpoint of the insured" was removed from the definition of "occurrence" and reinserted as an exclusion from coverage.[44] The reason for the 1986 modification was so that courts would not be forced to construe the definition of "occurrence" as if it were an exclusion. Instead, the 1986 revision creates an express exclusion for intentional acts.[45] And whether the act was intentional was to be determined from the "standpoint of the insured." This left the definition of "occurrence" we have in this case:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Holmes' Appleman on Insurance* presaged that determining the "threshold question of whether an 'occurrence' happened, which is distinct from the question of whether the 1986 intentional injury exclusion applies, can result in difficulty." [46] This is the difficulty that we face today.

From our review of *Appleman,* we note that there is a relationship between the policy's definition of "occurrence" and the exclusion for intentional acts. *Appleman,* in fact, suggests that the 1986 redraft was designed to shift the intentional injury inquiry into an exclusion. As well, the construction given to the word "occurrence"

---

40. *See, e.g., Silverball Amusement v. Utah Home Fire Ins. Co.*, 842 F.Supp. 1151, 1163 (W.D.Ark.1994).

41. 16 Eric Mills Holmes, Holmes' Appleman on Insurance 2d §§ 117.1–117.5, at 202–401 (2000).

42. *Id.* § 117.4, at 353.

43. *Id.* § 117.5, at 390 (emphasis omitted).

44. *Id.* at 392.

45. *Id.* § 117.1, at 217; *id.* § 117.5, at 392.

46. *Id.* § 118.1, at 408.

by Dallas Fire renders the exclusion for intended injury surplusage. We warned against this in *Cowan*.[47] And our duty is to give effect to all contract provisions, and render none meaningless.[48]

Finally, to read "occurrence" as narrowly as Dallas Fire suggests obviates the need for many other standard exclusions often contained in CGL policies. For instance, under Dallas Fire's construction, there would be no need for exclusions covering assault and battery or sexual misconduct claims. For these claims would not constitute "occurrences" under Dallas Fire's narrow interpretation.

### III

With respect to King, Jankowiak's petition alleges an "occurrence." Consequently, Dallas Fire has the duty to defend King. We reverse the court of appeals' judgment. King requests only a remand to the trial court to consider claims for attorneys' fees, something the trial court did not consider given that it granted Dallas Fire's summary judgment motion. Thus, we remand the case to that court for further proceedings consistent with this opinion.

---

47. 945 S.W.2d at 828.

48. *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex.1998).