IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 6, 2009

Charles R. Fulbruge III
Clerk

No. 07-10951

MARY KAY HOLDING CORP; MARY KAY INC; NEW ARROW CORP

Plaintiffs-Appellants

v.

FEDERAL INSURANCE COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-896

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Mary Kay Holding Corporation, Mary Kay Inc., and New Arrow Corporation (collectively, "Mary Kay") filed this diversity action against Federal Insurance Company ("FIC") in response to FIC's refusal to indemnify or defend Mary Kay in a suit brought against it by Marketing Specialists Corporation and others (collectively, "MSC") for alleged violations of the Employee Retirement

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA"), and the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 ("COBRA"). FIC moved for summary judgment; Mary Kay moved for partial summary judgment. The district court granted FIC's motion and denied Mary Kay's motion. For the reasons provided below, we AFFIRM.

## I. FACTS AND PROCEEDINGS

Mary Kay is a domestic cosmetics company that, from time to time, has purchased insurance policies from FIC. Mary Kay bought the policy at issue, No. 8146-1317 (the "Policy"), from FIC in the summer of 2002. The Policy was a renewal of a previous policy that offered similar coverage terms. Among other things, the Policy covered the "Sponsored Organization" of "Mary Kay Holding Corporation and its subsidiaries" for employee benefit claims filed against one or more such entities from August 1, 2002 to August 1, 2003.

Relevant terms of the Policy's "Fiduciary Liability" section—the section at issue in this case—are as follows:

- [FIC] shall pay . . . all Loss . . . on account of any Claim first made against the Insured during the Policy Period . . . for a Wrongful Act committed, attempted, or allegedly committed or attempted, before or during the Policy Period by an Insured or by any person for [whom] the Insured is legally responsible.

- [FIC] shall have the right and duty to defend any Claim covered by this coverage section.

- Insureds . . . means . . . [Mary Kay Holdings and its subsidiaries]; . . . [any Sponsored Plan]; . . . [an] Insured Person, or . . . any other [entity] so designated . . . .

- Wrongful Act means . . . any breach of the responsibilities, obligations or duties imposed upon fiduciaries of the

Sponsored Plan by [ERISA or] . . . any negligent act, error or omission in the Administration of any Sponsored Plan . . . .

- Sponsored Plan means . . . an [ERISA plan] which is operated solely by [Mary Kay Holding Corporation or its subsidiaries] . . . for the benefit of the[ir] employees . . . and which existed at the Inception Date of this coverage section or of any policy . . . of which this coverage section is a renewal . . . .

- Subsidiary . . . means any [entity] in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly . . . by [Mary Kay].

- Administration means giving advice to employees, handling records, or effecting enrollment, termination or cancellation of employees under a benefit plan.

- [FIC] shall not be liable . . . in consequence of the failure of the Insured to comply with any law governing workers' compensation, unemployment, social security or disability benefits or any similar law, except [COBRA] . . . .

On May 15, 2003, a group led by then-bankrupt Marketing Specialists Corporation filed suit against Mary Kay in the United States District Court for the Eastern District of Texas (Case No. 5:03-CV-95) (the "MSC Suit"). Through a series of amended complaints, the MSC Suit made several claims against Mary Kay—which had apparently supported MSC financially at one time—and related corporate and individual defendants. Pertinently, among the claims in the MSC Suit were "Breach of ERISA Fiduciary Duties, Prohibited Transactions and Failure to Comply with COBRA." The district court summarized the claims at issue as follows:

[T]he MSC Plaintiffs alleged that officers of Mary Kay, while acting

as ERISA fiduciaries with respect to MSC's employee benefits plans, misused and diverted plan assets to pay general corporate obligations in violation of the fiduciary duties imposed by ERISA. The MSC Plaintiffs further alleged that these officers failed to disclose material information to participants of the MSC benefits plans and misrepresented the status of those plans and their rights to continuation coverage under COBRA. The complaint alleged that Mary Kay was vicariously liable for these alleged breaches of fiduciary duty. Additionally, the MSC Plaintiffs alleged that Mary Kay was directly liable for failing to provide COBRA continuation coverage to MSC plan participants upon the termination of their employment with MSC.

Mary Kay Holding Corp. v. Fed. Holding Co., No. 3:06-CV-0896, 2007 WL 4179313, at *1 (N.D. Tex. Aug. 14, 2007) (footnote omitted).

The MSC Suit's complaint alleged that "Mary Kay was a member of a controlled group . . . which included [MSC]," and it is this "control group" relationship that Mary Kay contends exposes it to liability for failing to abide by COBRA for MSC employees. Nevertheless, the complaint never alleges that MSC was a subsidiary of Mary Kay during the Policy term—i.e., August 2002 to August 2003—which is a status required of MSC for coverage. This is understandable given that any subsidiary stake that Mary Kay may have had in MSC was gone by virtue of an April 4, 2002 approval by a federal bankruptcy court of MSC's reorganization which included cancellation of "all of the existing stock of [MSC]" and its reissue to a reorganization trust separate and apart from Mary Kay, effective May 26, 2002. Only the fact—and not the details—of the MSC bankruptcy are included in the MSC Suit's complaint.

Despite the MSC reorganization, Mary Kay sought Policy coverage for the MSC Suit and notified FIC of the claims on or about May 29, 2003. FIC denied coverage on November 29, 2004, stating that "[b]ecause MSC is not a Subsidiary

4

of Mary Kay, the Policy provides no coverage in connection with alleged misconduct involving benefit plans provided or sponsored by MSC." On June 13, 2005, FIC stated that, as to Mary Kay plan claims, the Policy covers fiduciary breaches, not failures to sponsor the plan benefits at issue in the MSC Suit. In any event, Mary Kay entered into a settlement in the MSC Suit on September 28, 2005, which the court in that case then approved on January 18, 2006.

Mary Kay first filed the present action on May 18, 2006.[1] In its complaint, Mary Kay seeks to recover the defense and settlement costs that it incurred as a result of the MSC Suit, as well as damages and penalties for failure to promptly pay the claim. Although the original complaint made claims for both indemnity and a duty to defend, only the duty to defend is before this court on appeal. In short, Mary Kay argues that the MSC Suit is covered by the Policy because the suit involved (1) vicarious ERISA fiduciary breaches and COBRA violations relating to benefit plans of MSC, and/or (2) direct COBRA violations relating to benefit plans of Mary Kay as a control group member. FIC denies that the MSC Suit is covered, because (1) there is no liability with respect to MSC plans because MSC was not a covered Mary Kay subsidiary, either under the Policy's terms or as a result of reorganization, and (2) any liability regarding Mary Kay plans is barred because any such claim would be made against it as a sponsor, not as a covered fiduciary.

After a period of discovery, Mary Kay filed a motion for partial summary judgment on February 23, 2007 on its central claim of FIC's liability under the Policy for Mary Kay's "reasonable and necessary defense costs" in the MSC Suit.

---

[1] On April 3, 2007, Mary Kay obtained leave to file an amended complaint. There are no substantive differences from the original complaint for purposes of this appeal.

FIC then filed a motion for full summary judgment on all claims. On August 14, 2007, the district court granted FIC's motion and denied Mary Kay's motion. As to MSC plans, it found that given its bankruptcy, "as of August 1, 2002 [i.e., the Policy's effective date], MSC was not a subsidiary of Mary Kay, as defined in the Policy, and the MSC employee benefit plans were not sponsored plans," and, thus, MSC plan-based claims "do not allege wrongful acts within the scope of the Policy."[2] The court noted that the bankruptcy order constituted evidence outside the "eight-corners rule" that looks only to the policy and complaint for finding a duty to defend in Texas. See Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 350 (5th Cir. 2005). Nevertheless, it found that a "coverage" exception to the rule should apply because subsidiary status under the Policy only concerns coverage and does not implicate the merits of the underlying action. See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308–09 (Tex. 2006). As to Mary Kay plans, the court found that any failure to offer COBRA coverage was a sponsorship issue, and did not fit the Policy's coverage of fiduciary acts.

Mary Kay filed a notice of appeal on September 6, 2007. In its brief, Mary Kay notes six issues for review. These issues, however, come down to two basic questions: (1) whether the district court erred in finding that MSC was not a "subsidiary" under the Policy, and (2) whether the district court erred in finding that the claims against Mary Kay under COBRA relating to Mary Kay's plans were not "wrongful acts" under the Policy.[3]

---

[2] The district court's finding that MSC's plans were not "sponsored" under the Policy also applied in its analysis of alleged COBRA misrepresentation over such plans.

[3] Mary Kay also appeals the dismissal of state insurance code and "bad faith" denial claims, yet given the lack of briefing (no cases or statutory provisions are cited in support), any

## II. STANDARD OF REVIEW

This court reviews grants of summary judgment de novo. Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This court "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." Performance Autoplex II Ltd. v. Mid-Continent Cas. Co., 322 F.3d 847, 853 (5th Cir. 2003). Finally, as to the duty to defend, "[u]nder the eight-corners . . . rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." Gomez v. Allstate Tex. Lloyds Ins. Co., 241 S.W.3d 196, 202 (Tex. 2007). And, in making this determination, "allegations against the insured are liberally construed in favor of coverage." GuideOne, 197 S.W.3d at 308.

## III. DISCUSSION

### A. MSC Plan Claims

The first ground for Mary Kay's alleged Policy coverage in the MSC Suit concerns certain ERISA and COBRA claims relating to benefit plans of MSC, which Mary Kay submits was covered as its "subsidiary" under the Policy. These claims include breaches of fiduciary and co-fiduciary duty, 29 U.S.C. §§ 1104, 1105, prohibited transactions, id. § 1106, and failures to offer plan benefit

---

appeal of the relevant findings is dismissed pursuant to Federal Rule of Appellate Procedure 28(a). See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993).

continuation and related information to participants, id. §§ 1161, 1166. As described above, the district court found in favor of FIC based on its adoption of a "coverage" exception to the "eight-corners rule" and, thereafter, its invocation of the bankruptcy order. We affirm the district court's finding, although we do so on alternative grounds.

While appreciating the arguments for a limited "coverage" exception to the "eight-corners rule," we recognize that Texas has yet to adopt such an exception. See, e.g., Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 497 (Tex. 2008) (observing that "Texas has not" recognized an exception to the "eight-corners rule"); GuideOne, 197 S.W.3d at 308–09 (acknowledging, without adopting, a "coverage" exception to the rule); see also Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 531 (5th Cir. 2004) (predicting, without applying, a limited exception that the Texas Supreme Court might adopt). Nevertheless, it is unnecessary for us to adopt it here because the district court's finding can be alternatively, and more directly, affirmed based on the fact that the MSC Suit's complaint—which is in the "eight corners"—fails to include any specific allegations from which Mary Kay subsidiary status during the Policy term can be discerned. See Northfield Ins. Co., 363 F.3d at 531 ("If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend."); King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002) ("If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." (quotation omitted)).

The only possible allegation in the MSC Suit's complaint relating to Mary Kay's position in MSC is through reference to an arguable Mary Kay subsidiary, "MS Acquisition, Ltd.," and a March 2001 Form 10-K stating that this entity

"owned approximately 81.9% of the outstanding common shares of [MSC]." Yet, not only does this assertion pre-date the Policy term, it pre-dates the bankruptcy of MSC. Bankruptcy, by its very nature, "causes fundamental changes in the nature of corporate relationships." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985). This pre-Policy term timing is perhaps not surprising given that the chief focus of the MSC Suit was on events surrounding MSC's bankruptcy, which occurred well before the Policy term. In any event, stretching arguable ownership allegations from well before to after bankruptcy in order to impose a duty to defend is simply a bridge too far, particularly given the Policy's present-tense definition of subsidiary—the Policy defines "subsidiary" as any entity "in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly . . . by [Mary Kay]." Thus, we hold that the MSC plan-based claims in the MSC Suit are not covered by the Policy.[4]

Of course, the foregoing assumes that it is the Policy term, and not any other prior point in time, that matters for coverage purposes. Mary Kay argues that by the Policy's references to "renew[ed]" policies—which would include the 2000–2002 policy—in its definition of "sponsored plan," and to acts "before or during the Policy period" in its coverage provision, the Policy "provides residual coverage to Mary Kay." Mary Kay's argument is misguided. First, the operative Policy term "subsidiary" is defined in the present tense. Second, language

---

[4] It should be noted that, at least on appeal, Mary Kay seeks only a duty to defend from FIC, and not indemnity. This is perhaps understandable given that, "[u]nlike the duty to defend, the duty to indemnify is not based on the eight corners of the policy and the underlying petition, but on the actual facts that form the underlying claim"—a situation that would likely call for the bankruptcy order and, thus, doom an indemnity claim. Gomez, 241 S.W.3d at 205.

elsewhere in the Policy indicates—at least during a term—that it only covers new subsidiaries with further agreement (and a likely premium adjustment), and does not cover divested subsidiaries. Third, although pre-existing act coverage is understandable, particularly on a renewal, "perpetual coverage of former subsidiaries," as the district court put it, would likely present complex underwriting issues. We cannot impose such risks on FIC without supporting policy language. See King, 85 S.W.3d at 187 (observing that the duty to defend depends upon "the language of the insurance policy").

B.    Mary Kay Plan Claims

Turning to the second ground for Mary Kay's alleged entitlement to FIC coverage—i.e., direct claims against Mary Kay under COBRA—we agree with the district court. In asserting its entitlement to coverage, Mary Kay cites the following language from the MSC Suit's complaint: "Mary Kay was a member of a controlled group of corporations . . . which included [MSC] . . . [and] Mary Kay has failed to provide continuation coverage to the terminated [MSC] employees and to otherwise satisfy any of the other obligations imposed upon [it] by COBRA." The relevant COBRA obligations—at least as alleged—concern the provision of access to Mary Kay plan benefits under the relevant plan(s). See 29 U.S.C. § 1161. The problem for Mary Kay, however, is not its status as a covered entity—indeed, whether as a control group member or not, the MSC Suit has Mary Kay (which is an "insured") and its plans (which are "sponsored") clearly in its sights—but whether the relevant COBRA claims are "wrongful acts" under the Policy. We conclude that they are not.

The relevant Policy provisions, which are expressly described as providing "fiduciary liability coverage," only insure against claims of "wrongful acts." The

Policy defines "wrongful acts" as "any breach of the responsibilities, obligations or duties imposed upon fiduciaries of the Sponsored Plan by [ERISA], as amended, . . . or any negligent act, error or omission in the Administration of any Sponsored Plan." The district court properly found that the COBRA allegations were not covered "wrongful acts" because any alleged failure to offer continuing benefits under its plans rests on Mary Kay as a plan sponsor, and sponsorship acts or omissions are not fiduciary in nature. See 29 U.S.C. § 1161(a); Lockheed Corp. v. Spink, 517 U.S. 882, 890–91 (1996).

One is a "fiduciary" under ERISA only "to the extent . . . he exercises any discretionary authority or discretionary control respecting management . . . or disposition of [plan] assets . . . ." 29 U.S.C. § 1002(21)(A). Though some circuits have allowed fiduciary-based relief for failure to advise participants of COBRA rights, e.g., Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1301 (3d Cir. 1993), this court has taken care to distinguish between fiduciary and statutory ERISA duties. Cf. Lopez v. Premium Auto Acceptance Corp., 389 F.3d 504, 509 & n.9 (5th Cir. 2004) (holding that the COBRA notice rule, 29 U.S.C. § 1166, is a statutory rule, not a contractual duty). More importantly, the offer of such benefits in themselves—i.e., the core of the relevant claim in the complaint—would require inclusion of new participants in Mary Kay's plans, and, as such, would be a settlor, not a fiduciary, function in any event. See Spink, 517 U.S. at 890 ("sponsors who alter the terms of a plan [are not] fiduciaries"); see also Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated . . . [in] a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits . . . ."). COBRA relief may have been available in the MSC Suit,

but not as a fiduciary breach, as required for coverage under the Policy.

Mary Kay argues that even if the provision (or not) of COBRA benefits was a settlor function, the MSC Suit "allege[s] negligent administration by Mary Kay of its own benefits plan." Mary Kay cites complaint allegations that it "failed to otherwise satisfy any of the other obligations imposed on [it] by COBRA," and that MSC "sues" various agents of Mary Kay "for failing to disclose material information, and making knowing and intentional misrepresentations to participants in the Benefit Plans regarding . . . their rights to continuation coverage under COBRA . . . ." The complaint defined "Benefit Plans" as "various employee Benefit Plans that covered [MSC] employees, including without limitation the [MSC] Employee Group Benefit Plan."

Mary Kay's claim of non-sponsor duties fails for two reasons. First, the allegations that Mary Kay generally failed to comply with obligations of COBRA cannot support a duty to defend, because the MSC Suit's complaint only states them in a conclusory fashion. See Cornhill Ins. PLC v. Valsamis, Inc., 106 F.3d 80, 85 (5th Cir. 1997) ("Texas courts do not look to conclusory assertions of a cause of action in determining a duty to defend . . . [but to] the facts giving rise to the alleged actionable conduct . . . ."). Second, Mary Kay's only other basis for COBRA rights vis-a-vis Mary Kay plans—i.e., its alleged "fail[ure] to disclose material information, and making knowing and intentional misrepresentations to participants in the Benefit Plans"—excludes such plans because "Benefit Plans" includes only those that "covered [MSC] employees." The MSC Suit's complaint allegations regarding workers "los[ing] health coverage when their employment was terminated shortly after [MSC] filed [for] bankruptcy" and Mary Kay "fail[ing] to provide continuation coverage" defeat any claim that the

complaint thought of Mary Kay's plans as having "covered [MSC] employees," absent any theory of new enrollment via COBRA. MSC employees were never so covered.[5] Therefore, we affirm the district court on the Mary Kay plan claims.

## IV.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of summary judgment to FIC.

---

[5] In support of its claim for Policy coverage, Mary Kay also invokes the Policy's express exception of COBRA from a list of certain statutory "wrongful act" exclusions. As the district court found, however, exceptions to exclusions do not, in themselves, yield insurance coverage.