**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 6, 2009

Charles R. Fulbruge III
Clerk

No. 08-10552

EMPIRE INDEMNITY INSURANCE COMPANY

Plaintiff - Appellant

v.

ALLSTATE COUNTY MUTUAL INSURANCE COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-1415

Before GARWOOD, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

In this insurance dispute, plaintiff Empire Indemnity Insurance Company ("Empire") filed suit against Allstate County Mutual Insurance Company ("Allstate") alleging that Allstate breached its duties to defend and indemnify under an automobile insurance policy. The district court granted summary judgment to Allstate. Because Allstate was not required to defend under Texas's eight-corners rule and the undisputed facts do not trigger a duty to indemnify, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I. BACKGROUND

Allstate issued an automobile insurance policy to Edward Espinoza listing him as the named insured and a 2001 Mitsubishi Eclipse as a covered vehicle. The policy contained a broad coverage statement, providing that "[Allstate] will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." The definition of "covered person" included "[a]ny person using your covered auto." The policy also set forth a list of exclusions. The exclusion relevant in this case stated that Allstate would "not provide Liability Coverage for any person . . . [u]sing a vehicle without a reasonable belief that the person is entitled to do so."

Mitsubishi Motors Credit of America, Inc. (the "secured party") held a lien on Espinoza's Mitsubishi. When Espinoza defaulted on the loan, the secured party contracted with Innovative Asset Solutions ("IAS") to repossess the vehicle. In September 2002, IAS dispatched Lewis Breeden and another employee to repossess the vehicle. Upon arriving at Espinoza's residence, they found the vehicle and had a discussion with Espinoza's father. The father, after calling Espinoza, told Breeden and his colleague that the keys were in the glove compartment and that they should "take it." Breeden and his co-worker loaded the Mitsubishi onto a tow truck and left the Espinoza residence. However, the tow truck subsequently broke down due to a defective belt. Breeden called into headquarters and was instructed to "take the Mitsubishi off the truck and go find a belt and get the truck fixed, and then get back to the yard." Breeden and his colleague took the Mitsubishi off the truck and, with Breeden driving, headed to their nearest headquarters where they got petty cash.

They could not locate a belt at the auto parts store in New Braunfels, Texas; so they -- with the permission and knowledge of IAS personnel -- took the Mitsubishi to San Antonio to find the part. In the course of retrieving the part, Breeden (who was still driving) encountered "a white Mustang . . . [that] kept

2

toying with us." "The Mustang pulled up and slowed down, pulled up and slowed down. The third time he pulled up to us, the driver, [Breeden] gassed the Mitsubishi and went around the Mustang." As Breeden pulled from the fast lane into the slow lane (going about 80 mph), he lost control of the Mitsibishi and hit a third-party's Ford Explorer. The Explorer crashed into the highway median, severely injuring the driver and his wife.

Thereafter, in May 2003, the driver of the Explorer and his wife filed suit in Texas state court against IAS and Breeden (the "underlying action"). Their complaint gave no background facts relating to the repossession of the vehicle; nor did it indicate the reason why Breeden was driving the vehicle. The complaint also did not identify the Mitsubishi specifically, instead referring to it only as "the vehicle." The complaint stated in relevant part:

> 11. On or about September 14, 2002, Plaintiffs were southbound on N. FM 1604. Defendant Luis Breeden was street racing against another vehicle southbound on N. FM 1604, when he suddenly and unexpectedly smashed into the rear of Plaintiffs' vehicle, causing it to flip end over end and causing Plaintiffs' to incur serious bodily injuries . . . .

> 12. At the time of the occurrence of the act in question and immediately prior thereto, Luis Breeden was within the course and scope of employment for defendant Innovative Asset Solutions, Inc.
> . . . .

> 26. Defendant Luis Breeden's acts or omissions described above, when viewed from the standpoint of Defendant at the time of the act or omission, involved an extreme degree of risk, considering the possibility of harm to Plaintiffs and others.

> 27. Defendant Luis Breeden had actual, subjective awareness of the risk involved in the above described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs and others.

IAS had a policy with Empire that provided general coverage for damage caused by an accident involving a "covered auto." The Empire policy defined "covered auto" as any vehicle not owned by the insured but that is used in connection with the insured's business. Empire agreed to defend the suit under a reservation of rights.[1] Approximately three months later (but 16 months after the lawsuit was originally filed), Empire requested that Allstate defend the suit because it believed Espinoza gave Breeden permission to drive the vehicle. Empire sent a second request a couple of months later. Allstate refused to defend and indemnify because Empire's "insureds have never tendered the Lawsuit to Allstate for a defense" and because there is no coverage under the Allstate policy given that Breeden "did not reasonably believe he had permission to operate Mr. Espinoza's car at the time of the accident." IAS and Breeden settled the underlying suit for approximately $1 million, which Empire paid.[2]

Empire filed the instant action in the United States District Court for the Northern District of Texas in April 2007. The complaint sought declaratory relief under federal and state law stating that Allstate owed a duty of defense and indemnity (and consequently breached those duties), and monetary damages in the amount expended by Empire in the defense of and payments made for IAS and Breeden relating to the accident.

The parties filed cross-motions for summary judgment. The district court held that Allstate had no duty to defend under the eight-corners rule because the "reasonable belief" exclusion applied based on the facts alleged in the underlying complaint. Specifically, the district court reasoned that the allegations of street

---

[1] There is no dispute that the Empire policy provides coverage in this case; at issue is whether Allstate also owed Empire's insureds -- and consequently Empire as subrogee -- defense and indemnification.

[2] On November 19, 2003, Breeden pleaded guilty to a charge of aggravated assault with a deadly weapon for his part in the collision.

racing and conscious indifference "negate any inference that Breeden may have had a reasonable belief to use the vehicle in the manner it was being operated at the time of the accident." Because there was no duty to defend, the district court also held that there was no duty to indemnify. Accordingly, the district court granted Allstate's motion for summary judgment and denied Empire's motion for summary judgment. Empire timely appealed.

## II. STANDARD OF REVIEW

We review district court's grant of summary judgment *de novo. Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). A party is entitled to summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004). In reviewing the evidence, the court must therefore "refrain from making credibility determinations or weighing the evidence." *Turner*, 476 F.3d at 343.

## III. DISCUSSION

Empire first argues that the underlying complaint's failure to specifically identify the vehicle as the Mitsubishi covered by the Allstate policy is not fatal to its defense claim; rather, Empire urges the court to apply a narrow exception to the eight-corners for "pure coverage questions," such as the identity of the vehicle involved in the accident. Allstate contends we should affirm because a strict application of the eight-corners rule reveals insufficient allegations to trigger the duty to defend, and there can be no duty to indemnify absent a duty to defend. Allstate further argues that the facts alleged in the underlying complaint trigger the policy's "reasonable belief" exclusion, thus relieving

Allstate of the duty to defend. Alternatively, Allstate contends that it did not receive proper notice of the request for defense and that the undisputed facts do not require indemnity.

"An insurer's duty to defend and duty to indemnify are distinct and separate duties." *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). To determine whether the insurer owed a duty to defend, we apply the "eight-corners rule." Under this rule, "[a]n insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). An insurer has no legal obligation to defend its insured unless the complaint alleges facts within the scope of coverage. *See id.* When the insurer refuses to defend based on a policy exclusion, the insurer bears the burden of showing that the complaint's allegations trigger the exclusion. *See Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). All doubts as to the duty to defend are resolved in favor of the insured. *King*, 85 S.W.3d at 187.

Here, the Allstate policy insured damage caused by any covered person which, in turn, it defined as the named insured and his family members, as well as "any person using your covered auto." The complaint in the underlying action was completely silent as to the vehicle Breeden was driving, and it does not mention Allstate's named insured nor any of his family members. There is no allegation in that complaint that the defendants were engaged in repossessions, that the vehicle was repossessed from Espinosa, or that it was a Mitsubishi Eclipse; nor are there any identifying facts establishing that Breeden was using a "covered auto" under the Allstate policy. Thus, applying the eight corners rule, the facts alleged in the complaint do not set forth a claim

potentially covered by the Allstate policy (*i.e.*, damage caused by a person using a covered auto).[3]

Next, we turn to Empire's argument that the district court erroneously granted summary judgment to Allstate on the breach of the duty to indemnify claim. We affirm the district court's grant of summary judgment on the indemnification claim because the undisputed facts trigger the "reasonable belief" exclusion. The contract between the secured party and IAS did not allow or contemplate that the vehicle would be used in this manner by Breeden. Instead, the contract states that the secured party "relies upon [IAS's] representation and warrant that you are fully familiar with the requirements of the federal and any state debt collection practices statutes. All services shall be performed in strict compliance with the requirements of and provisions of these statutes." The relevant Texas statute mandates that the secured party -- and by extension IAS and its agents -- "use reasonable care in the custody and preservation of collateral." Tex. Bus. & Com. Code § 9.207(a). Moreover, the statute permits the secured party to "use or operate the collateral" but only for the purpose of preserving the collateral itself (or its value) or as permitted by court order. *See id.* § 9.207(b)(4). Driving the collateral to and from San Antonio searching for a truck part -- when the Mitsubishi could have easily been

---

[3] We note that in *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church,* 197 S.W.3d 305 (Tex. 2006), the Texas Supreme Court suggested that cases such as *International Service Ins. Co. v. Boll*, 392 S.W.2d 158, 160 (Tex. Civ. App.-Houston 1965, writ ref'd n.r.e.), might be appropriate for an exception to the eight-corners rule. *Boll* is in some respects arguably analogous to this case. However, in this case it has been properly determined, as explained in the text below, that under the actual facts the Allstate policy provided no coverage. The defendants in the underlying case were not named insureds in the Allstate policy and were covered by Empire's policy, and they were owed and were provided a defense (as well as indemnity) by Empire. Moreover, those defendants never requested a defense from Allstate, and Empire did not do so until about sixteen months after the underlying lawsuit was filed, and did not then or thereafter purport to do so on behalf of those defendants. *Cf. National Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 609-10 (Tex. 2008). In these circumstances, there is no valid reason to invoke an exception to the eight-corners rule.

exchanged for another non-collateral vehicle at the office -- went far beyond the limited purpose of preserving the collateral. Breeden and his principal were or reasonably should have been aware of their legal obligations in dealing with repossessed collateral. Breeden pleaded guilty to aggravated assault with a deadly weapon, which is impossible to reconcile with a reasonable belief that he was entitled to use the repossessed car as an auto parts delivery vehicle. Indeed, Breeden admitted that he never had permission to use the vehicle for this purpose. Thus, the undisputed facts require the application of the reasonable belief exclusion, thereby relieving Allstate of its duty to indemnify.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.