RHONDA A. PETERS & another[1] *vs.* UNITED NATIONAL
INSURANCE COMPANY.

No. 99-P-1168.

Suffolk. September 17, 2001. - February 15, 2002.

Present: GELINAS, GRASSO, & COWIN, JJ.

*Insurance,* Liquor liability insurance, Coverage, Construction of policy,
Insurer's obligation to defend. *Contract,* Insurance. *Statute,* Construction.

In an action brought by plaintiffs seeking a declaration that an insurer was li-
able to them for the amounts of default judgments rendered in favor of the
plaintiffs against an insured bar owner on liquor liability claims, the insurer
was, in the circumstances, entitled to defend on the issue of its indemnity
obligation, notwithstanding its choice not to defend its insured in the
underlying action. [777]

An assault and battery exclusion contained in a policy of liquor liability insur-
ance was not unlawful as inconsistent with the purpose or provisions of
G. L. c. 175, § 112A, requiring the availability of coverage against death
or injury arising from the negligent dispensation of alcohol [777-779], and
unambiguously barred recovery for damages suffered by plaintiffs as a
result of the alleged negligence of an insured [779-784].

o

CIVIL ACTION commenced in the Superior Court Department on
March 5, 1997.

The case was heard by *Nonnie S. Burnes,* J., on motions for
summary judgment.

*Christopher J. Kiely* for the plaintiffs.

*Richard J. Riley* for the defendant.

COWIN, J. The plaintiffs alleged that they were injured as the
result of an attack that took place outside of the Sports Bar and
Grill in Hull. In their complaint against CCP Company, Inc.
(CCP), the owner of the Sports Bar and Grill, they asserted that
CCP negligently failed to provide adequate security (counts I
and III) and that CCP negligently distributed, served, or sold

---

[1]Brian Peters.

alcoholic beverages to intoxicated patrons and minors, which negligence brought about the attacks causing their injuries (counts II and IV). CCP defaulted, and after a hearing to assess damages, judgments entered for Brian Peters in the amount of $34,000 and for Rhonda Peters in the amount of $8,034.

Prior to the incident from which this litigation arose, CCP had obtained liquor liability insurance coverage from the defendant, United National Insurance Company (United), a surplus lines insurance carrier approved by and registered with the Massachusetts Division of Insurance.[2] The United insurance policy was in effect at the time of the incident. Following entry of the default judgments in the plaintiffs' favor, CCP assigned all of its rights under the United insurance policy to the plaintiffs. The plaintiffs then commenced this action against United in which they sought a declaration that United is liable to them for the amounts of the default judgments under counts II and IV of their earlier complaint against CCP (the liquor liability counts). United counterclaimed, seeking a declaration that it was not liable therefor. A judge of the Superior Court allowed United's motion for summary judgment, denied the plaintiffs' cross motion for summary judgment, and entered final judgment in favor of United from which the plaintiffs appeal. We agree with the Superior Court judge that (1) United was entitled to defend on the issue of its indemnity obligation notwithstanding its choice not to defend CCP in the underlying action; (2) the United policy excluded coverage for the assault and battery alleged by the plaintiffs; and (3) United was not required to provide such coverage under the provisions of G. L. c. 175, § 112A.[3] Accordingly, we affirm the judgment for United. There are no material facts in dispute, and we refer to

---

[2] As a "surplus lines insurer," United was not licensed to do business in Massachusetts. It could, as it did here, sell lines of insurance in Massachusetts that were not otherwise available within the State on the condition that such insurance was placed by a Massachusetts licensed special insurance broker. G. L. c. 175, § 168. *Orion Ins. Co. PLC* v. *Shenker*, 23 Mass. App. Ct. 754, 759 (1987). CCP, having been unable to obtain full liquor liability coverage from a Massachusetts carrier, turned to United to provide its insurance.

[3] In light of our interpretation of G. L. c. 175, § 112A, it is unnecessary to address United's contention that it is not subject to the provisions of § 112A because it is a surplus lines insurer.

such facts as are meaningful where appropriate in the course of the opinion.

1. *United's right to contest coverage.* United declined to defend or indemnify CCP in the underlying action on the ground that, since there was no coverage for negligent failure to provide adequate security, and since claims for damages resulting from assault and battery were excluded from the liquor liability coverage which United had provided, United was not contractually obligated to participate. The plaintiffs agree with the motion judge that United is not barred from asserting its position that there is no coverage at this stage. However, the plaintiffs assert that United, having wrongfully refused to defend CCP, now has the burden of showing that the damages awarded in the underlying action arose from the admittedly uncovered claim for negligent failure to provide adequate security rather than from the allegedly covered claim for the negligent dispensation of alcoholic beverages, or of otherwise demonstrating a basis for apportioning the damages between the two theories. See *Liquor Liab. Joint Underwriting Assn. of Mass.* v. *Hermitage Ins. Co.,* 419 Mass. 316, 323-324 (1995). The short answer to this proposition is that, for the reasons stated below, United had no contractual obligation with respect to *either* of the types of claims asserted by the plaintiffs against CCP. Consequently, there has been no wrongful refusal by United to defend or indemnify CCP, and there is nothing to apportion. United acted within its rights by relying (correctly, as it turns out) on its interpretation of its own insurance contract, and it was entitled to defend its position in the declaratory judgment case.

2. *The assault and battery exclusion.* The insurance policy provided to CCP by United provided in relevant part that United "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to which this insurance applies, sustained by any person if such liability is imposed upon the insured by reason of the selling, serving or giving of any alcoholic beverage at or from the insured premises, and [United] shall have the right and duty to defend any suit against the insured seeking damages." Nothing more appearing, a judgment for damages against CCP, if based on the negligent dispensing of alcoholic beverages, would

have obligated United to indemnify CCP with respect to that judgment. However, the policy contained an exclusion as follows: "[N]o coverage is provided under [this] policy . . . for either defense or indemnification, for any claim asserting a cause of action within any of the Exclusions listed below." One of those exclusions, labeled the "Assault & Battery Exclusion," applied to "[c]laims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the Insured, and/or his employees." United asserts that the plaintiffs' claims that they were the victims of assaults and batteries arising out of the negligent serving of liquor fall within the exclusion and that United was therefore not responsible either to defend CCP or to pay the judgments against it.

We agree with United, as did the motion judge. We construe the exclusionary language in its usual and ordinary sense. *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 605 (1978). In doing so, we take into account "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). Applying these criteria, we fail to locate the ambiguity that the plaintiffs contend requires a construction of the exclusionary clause against the insurer. The clause provides that the insurer will not pay claims arising out of an assault and/or battery which, based on the plaintiffs' own complaint in the underlying case, these plainly did.

That the plaintiffs' complaint alleged negligence on the part of CCP does not alter the result. The point was addressed in *United Natl. Ins. Co.* v. *Parish*, 48 Mass. App. Ct. 67 (1999). There, as here, the plaintiff alleged that he was injured as the result of an assault and battery that was permitted to occur, or that was facilitated, by the negligence of the insured. The exclusionary language of the applicable policy was the same as that presently at issue. We stated that "without the underlying assault and battery, there would have been no personal injuries and, therefore, no basis for a suit against the insured for negligence. All of the claims derive from the assault and battery that is the source of the plaintiff's personal injury." *Id.* at 70.

"It is the source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged in the complaint which determines the insurer's duty to defend." *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.*, 40 Mass. App. Ct. 722, 727 (1996). To the same effect, see *United Natl. Ins. Co.* v. *Entertainment Group, Inc.*, 945 F.2d 210, 213 (7th Cir. 1991).

The plaintiffs observe, correctly, that the *Parish* case and others that have reached similar results decided disputes under general liability policies rather than under policies providing protection with respect to liquor liability. They argue in this regard that the exclusionary language, obvious in its effect in a general liability context, operates ambiguously when applied to liquor liability because an assault and battery brought about by the negligent dispensation of liquor is not "caused by or at the instigation of, or at the direction of, or omission by, the insured, and/or his employees." We do not have the difficulty claimed by the plaintiffs in seeing that the exclusion operates in the same way regardless of the context. The exclusion was designed to eliminate coverage where an assault or battery traceable either to the intentional acts or to the negligence of the insured occurs. The reference to an assault or battery caused by an "omission by the insured" plainly implicated the concept that the event has taken place because of the failure of the insured to do something it should have done, i.e., a failure to comply with an applicable standard of care. See *United Natl. Ins. Co.* v. *Penuche's, Inc.*, 128 F.3d 28, 31 (1st Cir. 1997) (specific instances identified in exclusionary clause not intended to provide exhaustive list of conduct contemplated by the exclusion). We discern no difference for these purposes between assault or battery arising from negligence in a general liability context, and assault or battery arising from negligence in a liquor liability context. United's defense to this claim under the exclusionary clause was valid.

3. *Effect of G. L. c. 175, § 112A.* The plaintiffs argue that the assault and battery exclusion of the policy, construed as we have to preclude coverage of their claims, is inconsistent with the provisions of G. L. c. 175, § 112A. That statute, in the pre-1998 version applicable to this case, provided in pertinent part:

"Liquor legal liability insurance shall provide insurance coverage against the legal liability of the insured and against loss, damage or expense incident to a claim arising out of death or injury to any person as the result of negligence in the distribution, sale, or serving of alcohol by a licensee or an employee, or agent thereof, or any other person or entity to whom a policy of liquor legal liability insurance has been issued." The plaintiffs contend that the seemingly mandatory provision requiring the availability of coverage against death or injury arising from the negligent dispensation of alcohol prohibits and renders unenforceable the assault and battery exclusion under the principle set forth in *Cardin* v. *Royal Ins. Co. of America*, 394 Mass. 450, 453 (1985) ("no matter how explicit the exclusionary language may be, it cannot prevail if it is contrary to the statutory language or the legislative policy"). The question is whether, by means of the language of c. 175, § 112A, the Legislature has in fact required that insurance carriers provide liquor legal liability coverage without the kind of exclusion at issue here.

We interpret the statute "according to the intent of the Legislature, as evidenced by the language used, and considering the purposes and remedies intended to be advanced." *Glasser* v. *Director of the Div. of Employment Sec.*, 393 Mass. 574, 577 (1984). The meaning we assign "must be reasonable and [must be] supported by the purpose and history of the statute." *Commonwealth* v. *Russ R.*, 433 Mass. 515, 520 (2001), quoting from *Wright* v. *Collector & Treasurer of Arlington*, 422 Mass. 455, 457-458 (1996). "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 587 (1984), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934).

The derivation of § 112A aids significantly in determining its meaning. Section 112A appears for the first time as § 15 of St. 1985, c. 223. That chapter, entitled "An Act Relative to Liquor

Liability Insurance," was a legislative response to the increasing difficulty in obtaining liquor legal liability coverage experienced by liquor licensees. The act created a joint underwriting association consisting of all insurers authorized to write personal injury liability insurance within the Commonwealth. St. 1985, c. 223, § 2. The association is authorized to issue policies providing liquor legal liability coverage subject to limits promulgated by the commissioner of insurance, but in no event to exceed $500,000 per claimant and $1 million for all claimants under one policy. St. 1985, c. 223, § 3. A licensee who has made a reasonable effort to obtain insurance, but who has been unable to do so, may apply to the association for coverage. St. 1985, c. 223, § 5. If the association determines that the applicant meets the underwriting standards established in the commissioner's plan of operation, and certain other conditions are satisfied, the association shall issue a liquor legal liability policy. *Ibid.* The act provides for an appeal to the commissioner under certain circumstances, with the commissioner's decision in turn subject to review by the Superior Court. St. 1985, c. 223, §§ 9-10.

Devoted as it is to enhancing the availability of "liquor legal liability insurance," it was necessary for the act to define what "liquor legal liability insurance" is. That definition appears in § 1 of St. 1985, c. 223, and, omitting factors not relevant to this case, describes "liquor legal liability insurance" as "insurance coverage against the legal liability of the insured and against loss, damage, or expense incident to a claim arising out of death or injury to any person as the result of negligence in the distribution, sale or serving of alcohol by any licensee, or by any other person or entity to whom a policy of liquor legal liability insurance has been issued or an employee, or agent thereof." Except for the movement of a phrase referring to employees or agents from one part of the sentence to another, the related provision of § 15 of St. 1985, c. 223, which added c. 175, § 112A, to the General Laws, repeats verbatim the definition of "liquor legal liability insurance" which appears in St. 1985, c. 223, § 1. This being the case, we conclude, as did the Superior Court judge, that § 112A is definitional only, and does not purport to create mandatory criteria governing what kinds of liquor liability

coverage must be provided. In other words, § 112A must be read in its context, i.e., as part of the creation of the joint underwriting association empowered to sell liquor liability coverage to those otherwise unable to obtain it. As such, § 112A defines what the association is empowered to sell, not what it must sell.[4]

Our reading of § 112A is consistent with the purpose of establishing the liquor liability joint underwriting association. The association "is a nonprofit association created by the Legislature to provide liquor legal liability insurance to sellers and distributors of alcohol who were previously unable to obtain liability insurance in the private market." *Hermitage Ins. Co.*, *supra* at 318. A holding that the association or other private carrier must provide coverage for any loss arising from death or injury resulting from negligence in the dispensing of alcohol without limitation except for the $500,000/$1,000,000 limits of coverage established by St. 1985, c. 223, § 3, would frustrate the very purpose for which the statute was enacted. Deprived of the right to fashion policies which are economic from their viewpoint, the joint underwriting association will inevitably increase the cost of such coverage. Surplus lines carriers such as United may well forgo providing such insurance altogether. At the same time, given that liquor legal liability coverage is not mandatory in Massachusetts except under narrowly defined circumstances,[5] licensees are likely to resist higher premiums by not purchasing protection at all. The end result is a far cry from realization of the apparent legislative objective of expanding the availability of coverage.

Furthermore, in instances where the Legislature has mandated certain levels of coverage, it has done so in explicit terms far different from the single sentence of § 112A. Thus, for example,

---

[4] We are mindful that § 112A uses the often mandatory word "shall" in reference to what liquor legal liability insurance provides. For the reasons stated, the word "shall" in this context does not mandate a particular level of coverage. "[T]ests by which to measure legislative intent . . . must yield to the underlying aim of all statutory interpretation, which is to discern the legislative intent disclosed by the enactment as an entirety in the light of its dominant purpose and to declare its appropriate application to particular facts." *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 276 (1932).

[5] See G. L. c. 138, §§ 64A, 67; *Gottlin* v. *Herzig*, 40 Mass. App. Ct. 163, 170 (1996).

G. L. c. 175, § 113C, specifies the additional amounts of motor vehicle liability coverage that must be offered by companies which write compulsory insurance in Massachusetts. General Laws c. 175, § 113L, mandates coverage for loss caused by operators of uninsured motor vehicles, and states that "[n]o policy shall be issued or delivered . . . with respect to a motor vehicle . . . registered in this state unless such policy provides coverage in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter." Likewise, G. L. c. 175, § 99, mandates the terms of fire insurance policies.

General Laws c. 175, § 112A, does none of these things. Statute 1985, c. 223, the special act from which § 112A springs, established no minimum requirements, mandated no terms or conditions, and created no standardized form. While § 4 of St. 1985, c. 223, calls upon the Commissioner of Insurance to promulgate a "plan of operation" for the association which, among other things, establishes "specific limits of coverage based upon type of license, gross volume of liquor sales or service . . . , and such other criteria as the directors [of the association] shall develop," this does not preclude the fashioning of policies that exclude certain coverages. In addition, the "plan of operation" applies only to the association, and does not govern the offerings of companies such as United that are not members thereof. Suffice it to say, § 112A does not bring about the kind of insurance contract "mandated by statute and reduced to a form standardized across the Commonwealth" referred to in *Cardin* v. *Royal Ins. Co. of America, supra* at 453.

The plaintiffs, in order to prevail on their contention that § 112A creates mandatory requirements that render the assault and battery exclusion unlawful, necessarily assume that the Legislature, by means of the single sentence which comprises all of § 112A, intended (a) to create what is essentially an assigned risk pool for liquor legal liability insurance; and (b) to eliminate all exclusions from coverage with the exception of the $500,000/$1,000,000 ceiling. In our view, the single sentence is not a foundation that can carry such weight. Furthermore, it is anomalous to conclude that the Legislature intended to create an assigned risk pool to make available coverage that, unlike automobile insurance, is not generally mandatory. In short, had

the Legislature desired to create such a system, we believe it would have said so with considerably greater clarity.

4. *Conclusion.* Given the language of § 112A and contrasting it with language used elsewhere in c. 175, and given the purpose of the statutory scheme, we conclude that the assault and battery exclusion at issue is not unlawful in Massachusetts. We hold further that the exclusion in this policy unambiguously barred recovery for the plaintiffs' damages.

"As the action is one for declaratory relief, the [Superior] Court judge was required to make a declaration of the rights of the parties." *Vergato* v. *Commercial Union Ins. Co.*, 50 Mass. App. Ct. 824, 829 (2001), quoting from *Dupont* v. *Dracut*, 41 Mass. App. Ct. 293, 297 (1996). The judgment is to be modified to declare that the assault and battery exclusion in the liquor liability insurance policy issued by United is lawful and bars recovery by the plaintiffs in this case. As so modified, the judgment is affirmed.