GREAT NORTHERN INSURANCE COMPANY as subrogee of National Grange Mutual Insurance Company, CNA Commercial Insurance Company as subrogee of Group Benefit Strategies, and National Grange Mutual Insurance Company, Plaintiffs

v.

PAINO ASSOCIATES, and Massachusetts Turnpike Authority, Defendants/Third–Party Plaintiffs

v.

Caliber One Indemnity Co., Third–Party Defendant

v.

Transcore, Inc., Defendant/Third–Party Defendant/Fourth–Party–Plaintiff

v.

Manpower, Inc., Fourth–Party Defendant

No. CIV.A.02–12126–REK.

United States District Court, D. Massachusetts.

May 18, 2005.

---

Joseph H. Aronson, McCormack & Epstein, Boston, for Massachusetts Turnpike Authority, Third–Party Plaintiff.

Grace V. Bacon, Morrison Mahoney LLP, Boston, for Transcore, Inc., Third–Party Defendant.

John C. Barker, Michienzie & Sawin, LLC, Boston, for Paino Associates, Defendant.

James P. Cullen, Jr., Cozen & O'Connor, Philadelphia, PA, for Great Northern Insurance Company, CNA Commercial Insurance Company, Plaintiffs.

Thomas C. Federico, Morrison Mahoney LLP, Boston, for Transcore, Inc., Third–Party Defendant.

Michael J. Grace, Adler, Pollock & Sheehan, PC, Boston, for Manpower, Inc., Fourth–Party Defendant.

Jonathan Hurwitz, Cozen O'Connor, Philadelphia, PA, for Great Northern Insurance Company, Plaintiff.

Richard B. Kirby, Keegan, Werlin & Pabian, LLP, Boston, for Caliber One Indemnity Co., Third–Party Defendant.

Patrick J. Loftus, III, Law Offices of Patrick Loftus, Boston, for CNA Commercial Insurance Company, Great Northern Insurance Company, Plaintiffs.

Michael J. McCormack, McCormack and Epstein, Boston, for Massachusetts Turnpike Authority, Third–Party Plaintiff.

Massachusetts Turnpike Authority, Defendant.

Paul Michienzie, Michienzie & Sawin, LLC, Boston, for Paino Associates, Defendant.

Matthew C. Oleyer, Keegan, Werlin & Pabian, LLP, Boston, for Caliber One Indemnity Co., Third–Party Defendant.

John Racicot, Michienzie & Sawin, LLC, Boston, for Paino Associates, Defendant.

Joseph F. Rich, Cozen & O'Connor, Philadelphia, PA, for CNA Commercial Insurance Company, Great Northern Insurance Company, National Grange Mutual Insurance Company, Plaintiffs.

Richard A. Sawin, Jr., Michienzie & Sawin, LLC, Boston, for Paino Associates, Defendant.

Erica L. Silverman, McCormack & Epstein, Boston, for Massachusetts Turnpike Authority, Defendant.

Edward F. Whitesell, Jr., Adler, Pollock & Sheehan, PC, Boston, for Manpower, Inc., Fourth–Party Defendant.

### Opinion

KEETON, Senior District Judge.

### I. Pending Matters

Pending for decision are matters related to the following filings:

(1) Motion of Third–Party Plaintiff, Massachusetts Turnpike Authority, for Summary Judgment Against Third–Party Defendant, Caliber One Indemnity Co. (Docket No. 62, filed September 2, 2004);

(2) Memorandum in Support of Third–Party Plaintiff, Massachusetts Turnpike Authority's Motion for Summary Judgment Against Third–Party Defendant, Caliber One Indemnity Co. (Docket No. 63, filed September 2, 2004);

(3) Motion of Third–Party Plaintiff, Massachusetts Turnpike Authority, for Summary Judgment Against Third–Party Defendant, Transcore, Inc. (Docket No. 66, filed September 24, 2004);

(4) Memorandum in Support of Third–Party Plaintiff, Massachusetts Turnpike Authority's Motion for Summary Judgment Against Third–Party Defendant, Transcore, Inc. (Docket No. 67, filed September 24, 2004);

(5) Defendant Transcore, Inc.'s Opposition to the Massachusetts Turnpike Authority's Motion for Summary Judgment Against Caliber One Indemnity Company (Docket No. 70, filed October 1, 2004);

(6) Affidavit of Grace V. Bacon (Docket No. 71, filed October 1, 2004);

(7) Opposition of Third–Party Defendant, Caliber One Indemnity Company to Motion for Summary Judgment of Third–Party Plaintiff, Massachusetts Turnpike Authority (Docket No. 73, filed October 6, 2004);

(8) Response of Third–Party Defendant, Caliber One Indemnity Company to Statement of Fact of Third–Party Plaintiff, Massachusetts Turnpike Authority (Docket No. 74, filed October 6, 2004);

(9) Motion to Amend Caption of Opposition of Third–Party Defendant, Caliber One Indemnity Company to Motion for Summary Judgment of Third–Party Plaintiff, Massachusetts Turnpike Authority (Docket No. 75, filed October 7, 2004);

(10) Third–Party Defendant Transcore, Inc.'s Response to Third–Party Plaintiff Massachusetts Turnpike Authority's Statement of Facts Contained in Its Motion for Summary Judgment (Docket No. 79, filed October 26, 2004);

(11) Defendant Transcore, Inc.'s Opposition to the Massachusetts Turnpike Authority's Motion for Summary Judgment and Cross–Motion for Summary Judgment (Docket No. 80, filed October 26, 2004);

(12) Memorandum of Third–Party Plaintiff, Massachusetts Turnpike Authority, in Opposition to Cross–Motion of Third–Party Defendant, Caliber One In-

demnity Co., for Summary Judgment (Docket No. 81, filed October 28, 2004);

(13) Defendant Paino's Motion for Partial Summary Judgment Against Third-Party Defendant Massachusetts Turnpike Authority (Docket No. 83, filed November 1, 2004);

(14) Defendant Paino's Motion for Partial Summary Judgment Against Third-Party Defendant Massachusetts Turnpike Authority (Docket No. 84, filed November 1, 2004);

(15) Letter (non-motion) from John Racicot dated November 2, 2004 (Docket No. 88, filed November 2, 2004);

(16) Memorandum of Third-Party Plaintiff, Massachusetts Turnpike Authority, in Opposition to Cross-Motion of Third-Party Defendant, Transcore, Inc., for Summary Judgment (Docket No. 91, filed November 24, 2004);

(17) Opposition of Third-Party Defendant, Caliber One Indemnity Company to Defendant Paino's Motion for Partial Summary Judgment Against Third-Party Defendant Massachusetts Turnpike Authority (Docket No. 92, filed November 30, 2004);

(18) Response By Third-Party Defendant, Caliber One Indemnity Company to Defendant Paino's Concise Statement of Facts, in Support of Its Motion for Partial Summary Judgment Against Third-Party Defendant Massachusetts Turnpike Authority (Docket No. 93, filed November 30, 2004);

(19) Cross-Motion of Defendant, Massachusetts Turnpike Authority, for Summary Judgment Against Paino Associates (Docket No. 94, filed December 1, 2004);

(20) Memorandum of Defendant, Massachusetts Turnpike Authority, in Opposition to Motion of Paino Associates for Partial Summary Judgment, and in Support of the Massachusetts Turnpike Authority's Cross-Motion for Summary Judgment Against Paino Associates (Docket No. 95, filed December 1, 2004);

(21) Third-Party Defendant Transcore, Inc.'s Motion to Strike Certain Exhibits Attached to Third-Party Plaintiff, Massachusetts Turnpike Authority's Opposition to Its Cross-Motion for Summary Judgment (Docket No. 97, filed December 13, 2004);

(22) Exhibit A (Docket No. 99, filed December 15, 2004);

(23) Motion of Defendant, Massachusetts Turnpike Authority, for Summary Judgment Against Plaintiffs, Great Northern Insurance Company, CNA Commercial Insurance Company and National Grange Mutual Insurance Company (Docket No. 100, filed December 16, 2004);

(24) Memorandum of Defendant, Massachusetts Turnpike Authority, in Support of Motion for Summary Judgment Against the Plaintiffs, Great Northern Insurance Company and CNA Commercial Insurance Company (Docket No. 101, filed December 16, 2004);

(25) Opposition of Third-Party Plaintiff, Massachusetts Turnpike Authority, to Third-Party Defendant, Transcore, Inc.'s Motion to Strike (Docket No. 102, filed December 20, 2004);

(26) Joint Motion to Modify Scheduling Order By One Week (Docket No. 109, filed December 30, 2004);

(27) Third-Party Defendant Transcore, Inc.'s Reply to Third-Party Plaintiff, Massachusetts Turnpike Authority's Opposition to Its Cross-Motion for Summary Judgment (Docket No. 111, filed January 4, 2005);

(28) Joint Motion of Plaintiffs and Defendant Massachusetts Turnpike Authority to Dismiss Massachusetts Turnpike Au-

thority (Docket No. 116, filed January 28, 2005);

(29) Defendant Paino's Objection to Joint Motion to Dismiss Defendant Massachusetts Turnpike Authority (Docket No. 117, filed February 10, 2005);

(30) Defendant Paino's Objection to Joint Motion to Dismiss Defendant Massachusetts Turnpike Authority (Docket No. 118, filed February 11, 2005);

(31) Defendant Paino's Opposition to Cross–Motion for Summary Judgment By Massachusetts Turnpike Authority Against Paino (Docket No. 121, filed February 21, 2005);

(32) Affidavit of John C. Barker in Support of Defendant Paino's Oppositions to Motions for Summary Judgment (Docket No. 124, filed February 21, 2005);

(33) Exhibits (Docket No. 127, filed February 22, 2005);

(34) Motion of Third–Party Defendant Massachusetts Turnpike Authority to Continue Hearing on Motions Scheduled for March 24, 2005 (Docket No. 133, filed March 22, 2005);

(35) Plaintiffs' Reply to Third–Party Defendant Massachusetts Turnpike Authority's Motion to Continue the Hearing Set for Tomorrow—March 24, 2005 (Docket No. 134, filed March 23, 2005); and

(36) Assented To Stipulation of Dismissal Under Fed.R.Civ.P. 41(c) of Cross–Claims Between Defendants Paino Associates and Massachusetts Turnpike Authority (Docket No. 135, filed March 24, 2005).

## II. Factual and Procedural Background

The procedural background of this case was set forth in detail in my Opinion of April 13, 2005. In that opinion, I denied the summary judgment motions of defendant Transcore, Inc., and Manpower, Inc., and denied Transcore's oral motion to strike. As I noted in that opinion, the Massachusetts Turnpike Authority ("MTA") moved to continue argument on the motions relating to it; I allowed the continuance at the hearing held on March 24, 2005.

The remaining issues relating to the MTA are relatively narrow. Pursuant to stipulations of dismissal, the claims of the plaintiffs and defendant Paino Associates, LLC, have been dismissed, as has MTA's cross-claim against Paino Associates. (Docket Nos. 116, 135) MTA still has a third-party claim against Caliber One Indemnity Co. ("Caliber One") for indemnity and breach of contract. The parties have filed opposing motions for summary judgment on these claims. (Docket Nos. 62, 75) MTA also has asserted cross-claims against defendant Transcore for breach of indemnity clauses of its contract, breach of a clause relating to the maintenance of insurance, and contribution. MTA moved for summary judgment in its favor on the first of these three counts. (Docket No. 66) Transcore cross-moved for summary judgment on all three counts. (Docket No. 80) Transcore has also filed a motion to strike some exhibits filed by MTA. (Docket No. 97)

On May 17, 2005, I heard oral argument on these remaining motions.

## III. Disposition of Summary Judgment Motions

### A. Introduction

#### 1. Summary Judgment Standard

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine dispute of material fact exists. *See* Fed. R.Civ.P. 56. The movant has the "initial responsibility of informing the district court of the basis for its motion, and iden-

tifying those portions" of the record showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Then the non-moving party must demonstrate that "*every essential element* of its claim or defense is at least trialworthy." *Price v. General Motors Corp.*, 931 F.2d 162, 164 (1st Cir.1991) (italics in original).

A dispute is genuine if it "may reasonably be resolved in favor of either party." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997). Facts are "material" if they possess "the capacity to sway the outcome of litigation under the applicable law." *Id.* The facts in genuine dispute must be significantly probative in order for summary judgment to be denied; "conclusory allegations, improbable inferences, and unsupported speculation will not suffice." *Id.* Moreover, "[t]he standards are the same where ... both parties have moved for summary judgment." *Bienkowski v. Northeastern Univ.*, 285 F.3d 138, 140 (1st Cir.2002) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720, at 335–36 (3d ed. 1998) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.")).

This opinion assumes familiarity with the undisputed facts of this case as detailed in Part III.A.2 of my opinion of April 13, 2005, and incorporates herein that recitation of facts. I add a few facts related to the MTA and its claims against Caliber One and Transcore.

### 2. Facts Relevant to the Claim by MTA Against Caliber One

MTA asserts that it is entitled to coverage as an additional insured under the policy between Caliber One and Transcore. Under both the Violation Processing System and Violation Processing Services Agreement ("VPS Agreement"), and under the Electronic Toll Agreement, the MTA required Transcore to maintain Commercial General Liability Insurance "for all damages arising out of bodily injury or death, or damage to personal or real property incurred with respect to work performed under the [contract.]" (MTA Memo., Docket No. 63, Exhs. 3, 5) Transcore obtained an insurance policy from Caliber One. (MTA Memo., Docket No. 63, Exh. 9) This insurance policy included coverage for additional insureds as named by contract. (MTA Memo., Docket No. 63, Exh. 9) The endorsement for additional insureds is in relevant part as follows:

> It is agreed that any person or organization described below is an additional insured, but only with respect to liability arising out of the operation performed for the additional insured by or on behalf of the named insured.

>    *      *      *      *      *      *

> Additional Insureds: As Required by Written Contract

(MTA Memo., Docket No. 63, Exh. 9, Endorsement # 18)

MTA tendered its defense to Caliber One, but Caliber One refused. (MTA Memo., Docket No. 63, Exh. 12)

### 3. Facts Related to MTA Cross–Claims Against Transcore

MTA leased two suites at 27 Midstate Drive from Paino Associates, both on the second floor of the office building. (Transcore Memo., Docket No. 110, Exh. A, Rahn Aff. [hereinafter "Rahn Aff."], ¶¶ 6, 8) MTA allowed Transcore to occupy these two suites; Transcore also leased and occupied a third suite on the second floor. (*Id.*, ¶ 3) Transcore provided services to

the MTA under two contracts: the Electronic Toll Agreement and the VPS Agreement. (Id., ¶¶ 5, 11) Timothy Mickiewicz, who admitted setting the four fires at 27 Midstate Drive, performed work under the VPS Agreement at times of the fires. (Id., ¶ 11) At the times of the fires, he worked as an appeals clerk, handling incoming appeals of violations of the MTA's Fastlane system. (Eckert Dep. at 27–28)

Transcore hired Mickiewicz as a temporary employee from fourth-party defendant Manpower, Inc. (Id. at 59) The MTA was not involved in interviewing workers that Transcore received from Manpower. (Rahn Dep. at 62)

Mickiewicz had some contact with MTA employees as part of his role as an appeals clerk. On one occasion in July 2001, after an MTA employee gave some instructions to him, he was instructed by his superiors at Transcore not to take directions from the MTA, but to allow Transcore management to handle contact with the MTA instead. (Eckert Dep. at 65–67) Mickiewicz also made contact with an MTA employee, Robert Ferrara, in the fall of 2001, regarding some drug-related threats he was receiving from fellow employees. (Ferrara Dep. at 47–48) Ferrara reported this information to Mickiewicz's supervisor at Transcore, David Miller. (Ferrara Dep. at 47)

MTA argues that two provisions of the VPS Agreement between MTA and Transcore say that Transcore must indemnify MTA against liability from various acts by Transcore. (MTA Memo., Docket No. 67, Exh. 3) The first such provision stated:

9. Independent Contractor Relationship

The Parties intend that an independent contractor relationship will be created by this VPS Agreement. As between the Contractor and the Authority, the Contractor shall be responsible for any liability to third parties resulting from the negligent or intentional acts or omissions of the Contractor, its agents, consultants, employees, subcontractors, or suppliers arising from or occurring during the term of this VPS Agreement.

(Id. at 9) The second such provision stated in part:

16a. Indemnification

The Contractor [Transcore] shall indemnify, defend and hold harmless the Authority ... from and against any and all liability ... arising out of or resulting from any intentional acts, negligent acts, errors or omissions, or fault of the Contractor or its employees, subcontractors or agents in the provision and performance of the VPS System and Services.

(Id. at 14) MTA and Transcore take opposing positions concerning the meaning of these two provisions.

The VPS Agreement also contained a section concerning the maintenance of insurance. This section states, in part:

16a. Indemnification

\* \* \* \* \* \*

D. Insurance Policies

The Contractor shall take out and maintain, during the term of this Agreement "Insurance Policies" as set forth in Attachment D.

(Id. at 15) Attachment D states in part:

INSURANCE REQUIREMENTS

I. Contractor shall maintain for the entire term of the VPS Agreement the insurance coverage described below:

\* \* \* \* \* \*

(iii) Commercial General Liability Insurance for all damages arising out of bodily injury or death, or damage to personal or real property incurred with respect to work performed under the VPS Agreement. Said insurance shall

provide for bodily injury and property damage coverage limits of One Million Dollars ($1,000,000) per occurrence with an annual aggregate limit of Three Million Dollars ($3,000,000) and an annual aggregate limit for person injury of One Million Dollars ($1,000,000).

\*   \*   \*   \*   \*   \*

II. ... Those insurance policies maintained by Contractor pursuant to the Contract shall identify the Authority as an additional insured and shall provide that insurance for the benefit of the Authority shall be primary and the Authority's own insurance shall be non-contributing.

(MTA Memo., Docket No. 63, Exh. 5)

The other contract under which Transcore was performing services for MTA, the Electronic Toll Agreement, contained the following provision relating to indemnification:

> 45.1 *Indemnification by Contractor*
>
> Contractor [Transcore], at its expense, shall indemnify, defend and hold harmless the Authority ..., its members, officers and employees from and against any and all claims ... arising out of or resulting from any negligent acts ... of Contractor, its agents, employees, subcontractors or suppliers in the performance of the Contract.

(MTA Memo., Docket No. 67, Exh. 1, at 54)

This contract also had provisions relating to the maintenance of insurance by Transcore:

> 45.5 *Insurance Policies*
>
> Contractor shall take out and maintain, during the Contract Period, "Insurance Policies" as set forth in Appendix I.

(*Id.* at 55) Appendix I stated, in part:

> I. Contractor shall maintain for the Contract Period the insurance coverage described below:
>
> \*   \*   \*   \*   \*   \*

(iii) Commercial General Liability Insurance for all damages arising out of bodily injury or death, or damage to personal or real property incurred with respect to work performed under the Contract.

\*   \*   \*   \*   \*   \*

II. ... Those insurance policies maintained by Contractor pursuant to the Contract shall identify the Authority as an additional insured and shall provide that insurance for the benefit of the Authority shall be primary and the Authority's own insurance shall be non-contributing.

(*Id.*)

### B. Third–Party Claim Against Caliber One by MTA

MTA has moved for summary judgment in its favor on its claims against Caliber One for failure to defend and failure to indemnify. Although the motion is captioned a motion for summary judgment, it does not ask that any form of judgment be entered. I will construe this motion, instead, as a motion for an interlocutory ruling of law as to the meaning and applicability of the contractual provisions at issue in this case. *See Dooley v. Liberty Mut. Ins. Co.,* 307 F.Supp.2d 234, 240–41 (D.Mass.2004) (using this approach). In making these rulings I apply the standard set forth in Fed.R.Civ.P. 56(d). *See Dooley,* 307 F.Supp.2d at 240 (explaining that in these circumstances "a court may both (i) make legal rulings about materiality of factual assertions that are not properly controverted, and (ii) make legal rulings about factual assertions that are properly shown to be controverted.").

The central dispute between Caliber One and MTA is over the scope of cover-

age afforded by Caliber One's insurance policy. Caliber One does not dispute that insurance coverage is available, generally, to MTA as an additional insured under its policy with Transcore. The only issue is whether such coverage applies in the present case.

MTA's third-party complaint states that Caliber One violated both its duty to defend and its duty to indemnify. These two duties involve different standards. *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (1st Cir.2000) ("Under Massachusetts law, the duty to defend is broader than, and independent of, the duty to indemnify."). I address these two questions in turn.

### 1. Duty to Defend

First, I consider whether Caliber One had a duty to defend MTA in these circumstances. The Massachusetts Supreme Judicial Court has described how courts are to determine the scope of the duty to defend:

> The question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense. The scope of an insurer's duty to defend is based on the facts alleged in the complaint and those facts which are known to the insurer.

*Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 394, 788 N.E.2d 522 (2003) (internal quotation marks, citations, and alterations omitted). The defense must be undertaken "even if the claim is baseless, as 'it is the claim which determines the insurer's duty to defend.'"

*Mt. Airy Ins. Co. v. Greenbaum*, 127 F.3d 15, 19 (1st Cir.1997) (quoting *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass. App.Ct. 316, 324 n. 17, 458 N.E.2d 338 (1983)). The policyholder or, in this case, MTA as an additional insured, bears the initial burden of proving coverage, then the burden shifts to the insurer to prove application of a specific exclusion. *Camp, Dresser & McKee, Inc. v. Home Ins. Co.*, 30 Mass.App.Ct. 318, 321, 568 N.E.2d 631 (1991).

In this case, the parties dispute whether MTA has met its initial burden to show coverage. Both the original complaint (Docket No. 1) and the Amended Complaint (Docket No. 38) allege that negligent acts were committed by the agents of MTA or Transcore in the scope and course of employment. Count II of the Amended Complaint (Docket No. 38) accuses MTA, acting by and through its employees, of committing negligence by failing to provide adequate security, failing to monitor the restroom, failing to take other steps to reduce the risk of fires, and failing to adequately screen or select its employees. Count III of the Amended Complaint accuses Transcore of the same forms of negligence. The relevant policy provision is the additional insured provision, which states that coverage shall be available if the "liability aris[es] out of the operation performed for the additional insured by or on behalf of the named insured." (MTA Memo., Docket No. 63, Exh. 9, Endorsement # 18) A court must decide the initial question of coverage by matching the language in the complaint to this policy language. *Herbert A. Sullivan*, 439 Mass. at 394, 788 N.E.2d 522.

Caliber One argues that Mickiewicz's act of arson did not "arise out of" Transcore's operations under the agreement. Caliber One reasons that Mickiew-

icz was not acting in the interest of his employer Transcore at the time he was intentionally setting fires, so Transcore cannot be held vicariously liable for his actions. This argument, however, is premised upon a misreading of the complaint. The complaints in this case allege negligence by theories other than ordinary respondeat superior liability. As noted, the claims allege supervisory negligence—that is, negligence on the part of those who supervised Mickiewicz—and negligence of those who provided security at the office. The complaints could reasonably be interpreted to state that the negligence of these employees arose out of Transcore's operations under the contract.

Accordingly, MTA has sustained its initial burden to show that the coverage applies for purposes of giving rise to a duty to defend. Caliber One has not identified any express exclusion provision that applies to this case.

I conclude that Caliber One owed a duty to defend MTA in this case.

### 2. Duty to Indemnify

■ Next, I consider whether Caliber One is required to indemnify MTA as an additional insured under the terms of the insurance policy with Transcore. The interpretation of an insurance policy is appropriately decided as a matter of law. *See Norfolk & Dedham Mut. Fire Ins. Co. v. Quane*, 442 Mass. 704, 707, 816 N.E.2d 521 (2004); *Merchants Ins. Co. v. United States Fidelity and Guar. Co.*, 143 F.3d 5, 8 (1st Cir.1998).

The parties dispute whether any of the claims against MTA are for damages "arising out of" Transcore's operations under the contract. (MTA Memo., Docket No. 63, Exh. 9, Endorsement # 18) The relevant claims made against MTA in this case were the claims of the plaintiffs and the cross-claims of the co-defendant Paino Associates, both of which have now been voluntarily dismissed. These claims were for negligence in providing security, and negligence in the hiring, retention, and supervision of Mickiewicz. Caliber One's argument is primarily directed toward explaining why MTA or Transcore cannot be liable for Mickiewicz's arson under the doctrine of respondeat superior. This theory of liability, however, is not advanced by any party.

■ Under Massachusetts law, a claim of negligent provision of security is covered by a commercial general liability insurance policy unless an express exclusion applies. "The terms 'arising out of' and 'in connection with' are not be to be construed narrowly but are read expansively in insurance contracts." *Metropolitan Property and Cas. Ins. Co. v. Fitchburg Mutual Ins. Co.*, 58 Mass.App.Ct. 818, 820–21, 793 N.E.2d 1252 (2003). In holding that a claim for negligent provision of security was covered by a commercial general liability insurance policy with similar terms to the present policy, the Massachusetts Supreme Judicial Court stated:

> [T]he O'Brien claim [for negligent failure to provide adequate security] would involve an 'accident' under an 'occurrence' policy like Hermitage's [the insurer] because Lamplighter [the insured] would not have known to a substantial certainty that bodily injury it could have guarded against would result from conduct by its patrons. If Hermitage had intended to preclude coverage to Lamplighter for a claim based on an allegation of negligent failure to provide security, it could have done so in clear and unmistakable language.

*Liquor Liability Joint Underwriting Ass'n v. Hermitage Ins. Co.*, 419 Mass. 316, 322, 644 N.E.2d 964 (1995) (citations and internal quotation marks omitted).

Subsequent cases in Massachusetts courts have affirmed that insurers can exclude claims for negligence in providing security if the policies contain specific, broadly worded exclusions. *See Peters v. United Nat. Ins. Co.,* 53 Mass.App.Ct. 775, 778, 762 N.E.2d 881 (2002) (finding no coverage based on an assault and battery exclusion); *First Financial Ins. Co. v. LaRosa,* 49 Mass.App.Ct. 901, 901–02, 726 N.E.2d 978 (2000) (same). These cases do not change the default rule that commercial general liability policies cover claims for negligent provision of security.

Caliber One does not claim that a specific exclusion applies in this case.

Accordingly, I conclude that Caliber One's insurance policy covers the claim for negligent provision of security.

■ Courts have sometimes reached conflicting results concerning whether a claim for negligent supervision is covered by a commercial general liability policy when the supervised employee commits an intentional tort. *See, e.g., King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 190–92 & nn. 25–27 (Tex.2002) (noting split and finding coverage); *Mutual of Enumclaw v. Wilcox,* 123 Idaho 4, 9, 843 P.2d 154 (1992) (finding no coverage); *see generally* 2 Allan D. Windt, *Insurance Claims and Disputes* § 11.3, at 319–329 (4th ed. 2001 & Supp.2004) (collecting cases). The Supreme Court of Texas in the *King* case criticized the decisions finding no coverage, noting that those decisions erroneously conflated the intent of the employee with that of the employer. *Id.,* 85 S.W.3d at 191–92. Caliber One commits the same error in this case.

Massachusetts state law maintains the conceptual separation between the intent of the employee and the employer. *See Worcester Ins. Co. v. Fells Acres Day School, Inc.,* 408 Mass. 393, 407–09, 558 N.E.2d 958 (1990). In this regard, Massachusetts courts follow the weight of authority from other state appellate courts that have considered this problem. *Id. Accord King,* 85 S.W.3d at 192 (holding that coverage applied); *Agoado Realty Corp. v. United Intern. Ins. Co.,* 95 N.Y.2d 141, 145, 711 N.Y.S.2d 141, 733 N.E.2d 213 (2000) (same); *Horace Mann Ins. Co. v. Independent Sch. Dist. No. 656,* 355 N.W.2d 413, 420 (Minn.1984) (same); *Hanover Ins. Co. v. Crocker,* 688 A.2d 928, 930–31 (Me.1997) (same); *Wayne Tp. Bd. of Sch. Com'rs v. Indiana Ins. Co.,* 650 N.E.2d 1205, 1209 (Ind.App.1995) (same); *Property Cas. Co. of MCA v. Conway,* 147 N.J. 322, 330, 687 A.2d 729 (1997) (same); *Catholic Diocese of Dodge City v. Raymer,* 251 Kan. 689, 698–99, 840 P.2d 456 (1992) (same); *Northern Sec. Ins. Co. v. Perron,* 172 Vt. 204, 221–22, 777 A.2d 151 (2001) (same). *But see Wilcox,* 123 Idaho at 9, 843 P.2d 154. Caliber One has not provided any reason for me to anticipate that the Massachusetts Supreme Judicial Court would not apply this rule in this case.

■ Massachusetts law does, however, contain a narrow exception to this general rule: the intent of an employee may be imputed to the insured employer if the intentional torts are "so routine as to constitute a general practice or policy" of the employer. *Fells Acres,* 408 Mass. at 407, 558 N.E.2d 958 (remanding to trial court for further factual development of this question). In this case, Caliber One has made no contention that this case would fit under this exception identified in the *Fells Acres* case that the intentional tort, here, arson, "was so routine as to constitute a general practice or policy" of Transcore or MTA. *Id.* Nor does it appear from the record that such a contention would have any merit.

I conclude that Caliber One is obliged to indemnify MTA in this situation.

Accordingly, I will allow MTA's motion for summary judgment insofar as it seeks the above rulings of law, and I will deny Caliber One's Cross–Motion for Summary Judgment.

## C. Cross–Claims of MTA Against Transcore

MTA has moved for summary judgment in its favor on Count I of its third-party complaint, for breach of the indemnity clauses of its contract with Transcore. MTA's moving papers against Transcore do not propose that a particular form of judgment be entered. In essence, MTA seeks a ruling that Transcore is in breach of indemnity provisions in two contracts because it failed to defend and indemnify MTA in this action. Accordingly, as I did with MTA's motion for summary judgment against Caliber One, I will treat MTA's motion as a motion for an interlocutory ruling of law.

Transcore, on the other hand, has cross-moved for entry of judgment in its favor on the grounds that these provisions do not apply in this case. Transcore argues that the fire did not "arise out of" the agreement between MTA and Transcore, and that Mickiewicz's arson activities were outside the scope of his employment. This motion is properly described as a motion for summary judgment, and I will treat it as such.

## 1. Count I: Breach of Indemnity Clauses

MTA identifies two clauses of the VPS Agreement—Sections 9 and 16a, quoted above—that, it says, created a duty for Transcore to indemnify and defend MTA in this case. MTA argues that these two clauses explicitly indemnify the MTA from any liability resulting from intentional acts, including Mickiewicz's arson. Transcore argues that its duty to indemni-

fy is limited to damages "arising out of … the provision and performance of the VPS System and Services." Transcore argues that this language relieves it of its duty to indemnify because Mickiewicz was not providing services under the VPS agreement at the time he set the fires. Transcore does not address MTA's argument with respect to Section 9.

Both arguments miss the mark. The liability faced by MTA in this case was not under a respondeat superior theory of liability for Mickiewicz's acts. The plaintiffs' claims were for negligent supervision and negligence in providing security. (*See* Amended Complaint, Docket No. 38) The question concerning whether these provisions apply, therefore, turns upon the actions of the employees of MTA and Transcore who supervised Mickiewicz and undertook the security at the office, and not Mickiewicz himself.

As I have explained in Part III.B.2, above, under Massachusetts law, these two theories of negligence are considered to "arise out of" business operations for the purposes of a commercial general liability insurance policy. Mickiewicz worked under the VPS contract around the time he was setting fires at the office. His supervisors, who were allegedly negligent, were acting "in the provision and performance of the VPS System and Services." Accordingly, the indemnification and defense clause of the VPS Agreement applies to their actions. The record does not indicate under which contract those who undertook to provide security worked. Such a distinction, however, is not material, because both the VPS Agreement and the Electronic Toll Agreement provided for indemnification and defense of those allegedly negligent acts.

I conclude that Transcore agreed to indemnify and defend MTA for the claims presented in this case.

Accordingly, I will allow MTA's motion for summary judgment insofar as it seeks the above ruling of law and deny Transcore's motion for summary judgment in this respect.

### 2. Count II: Breach of Maintenance of Insurance Clause

Transcore argues that it was not obligated to secure insurance for the benefit of MTA in this case. This argument is also based upon the incorrect premise that the claims in this case are for respondeat superior liability for the acts of Mickiewicz. The claims, as explained above, are for the negligence of Mickiewicz's supervisors and for the negligence of those who provided security at 27 Midstate Drive.

Accordingly, I will deny Transcore's motion for summary judgment in this respect.

### 3. Count III: Contribution

MTA has asserted a cross-claim against Transcore for contribution. Transcore has moved for summary judgment in its favor on this claim. Under the Massachusetts joint tortfeasor statute, any joint tortfeasor who has paid more than its pro rata share of a judgment is entitled to seek contribution from the other joint tortfeasors. *See* Mass. Gen. Laws ch. 231B, §§ 1–4 (2004). Whether this provision applies depends upon whether a particular defendant has been found to be a joint tortfeasor.

■ I conclude that a disputed question of fact exists with respect to whether Transcore and MTA are subject to joint liability. The jury could find that one or more of the parties were negligent and that some of the other parties are jointly liable on this theory. Thus factual findings of the jury on the question of negligence are essential to any determination about rights of contribution.

Accordingly, I will deny Transcore's motion for summary judgment on this ground.

### IV. Other Matters

#### A. Motion to Strike

Transcore has moved to strike certain exhibits submitted by MTA. At the hearing on May 17, 2005, I noted that both parties committed improprieties in this situation. First, Transcore should have consulted with MTA before bringing the motion to strike. If Transcore had consulted with MTA before bringing the motion to strike on this ground, it seems likely that the controversy could have been avoided by an agreement that MTA would submit a new, accurate copy with a supporting affidavit. MTA, however, has responded to Transcore's motion by accusing Transcore's counsel of bad faith. This accusation is not supported, and MTA's counsel should not have been so needlessly contentious.

MTA and Transcore stipulated during the hearing that a different copy of the disputed exhibit, which had been submitted by MTA as part of an earlier filing, was accurate and could be relied upon by the court in deciding these summary judgment motions. In light of this stipulation, Transcore's motion to strike is now moot, and I will deny the motion for that reason.

I note that the authenticity of other exhibits submitted by the MTA without an affidavit has not been challenged by any party. Of particular import to the present motions are the contracts at issue in the dispute between Caliber One and MTA. Although MTA failed to include an affidavit attesting to their authenticity, MTA referred to these exhibits in MTA's statement of undisputed facts, and Caliber One did not raise the issue of their authenticity at that time. On this record, it does not appear that any dispute as to their authen-

ticity exists and that I may appropriately rule on the summary judgment motions as I described above.

Accordingly, I will deny the motion to strike as moot.

## B. Motion to Dismiss

The plaintiffs have moved to dismiss their claims against the MTA. Defendant Paino Associates initially opposed this motion to dismiss, but later withdrew their opposition. I will allow the motion insofar as it seeks dismissal of the plaintiffs' claims against the MTA. MTA will remain a party to this case, however, because it still has an outstanding cross-claim against Transcore and a third-party claim against Caliber One.

## ORDER

For the foregoing reasons, it is ORDERED:

(1) As explained in Part III.B of the foregoing opinion, Motion of Third–Party Plaintiff, Massachusetts Turnpike Authority, for Summary Judgment Against Third–Party Defendant, Caliber One Indemnity Co. (Docket No. 62) is ALLOWED insofar as it seeks the rulings of law stated in Part III.B.

(2) As explained in Part III.C.1 of the foregoing opinion, Motion of Third–Party Plaintiff, Massachusetts Turnpike Authority, for Summary Judgment Against Third–Party Defendant, TransCore, Inc. (Docket No. 66) is ALLOWED insofar as it seeks the rulings of law stated in Part III.C.1.

(3) Opposition of Third–Party Defendant, Caliber One Indemnity Company to Motion for Summary Judgment of Third–Party Plaintiff, Massachusetts Turnpike Authority and Cross–Motion of Caliber One Indemnity Company for Summary Judgment against Massachusetts Turnpike Authority (Docket No. 73) is DENIED.

(4) Motion to Amend Caption of Opposition of Third–Party Defendant, Caliber One Indemnity Company to Motion for Summary Judgment of Third–Party Plaintiff, Massachusetts Turnpike Authority (Docket No. 75) is ALLOWED insofar it seeks to amend the caption to Docket No. 73.

(5) Defendant TransCore, Inc.'s Opposition to the Massachusetts Turnpike Authority's Motion for Summary Judgment and Cross–Motion for Summary Judgment (Docket No. 80) is DENIED.

(6) Third–Party Defendant TransCore, Inc.'s Motion to Strike Certain Exhibits Attached to Third–Party Plaintiff, Massachusetts Turnpike Authority's Opposition to Its Cross–Motion for Summary Judgment (Docket No. 97) is DENIED as moot.

(7) Joint Motion of Plaintiffs and Defendant Massachusetts Turnpike Authority to Dismiss Massachusetts Turnpike Authority (Docket No. 116) is ALLOWED insofar as the plaintiffs' claims against the MTA are dismissed.